# UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF TEXAS LUBBOCK DIVISION

**ROBERT TRENT**, Plaintiff,

v.

**CAPELLA UNIVERSITY, LLC**, Defendant.

**Case No.:** [To be assigned]

## COMPLAINT AND DEMAND FOR JURY TRIAL

### INTRODUCTION

1. This action seeks relief for disability discrimination and whistleblower retaliation. Plaintiff Robert Trent, a high-performing employee with disclosed disabilities, was subjected to escalating adverse actions that began immediately after he requested accommodations and intensified with each step he took to report what he reasonably believed were systemic fraudulent practices involving federal funds.

2. The timeline establishes a clear pattern of causation: an exemplary employee was disciplined for disability-related traits only after his disclosure, denied accommodations, and ultimately terminated just 14 days after providing formal notice of his status as a whistleblower reporting federal violations.

3. Post-termination events have validated the merits of Plaintiff's claims: the U.S. Department of Justice referred his civil rights complaint to its Disability Rights Section; Congressman Jodey Arrington initiated multiple congressional inquiries into Plaintiff's whistleblower activities; and the Texas Workforce Commission found no misconduct-based reason for his separation, a determination Defendant did not contest.

### JURISDICTION AND VENUE

1. This Court has federal question jurisdiction over Plaintiff's claims under the Americans with Disabilities Act (ADA), the False Claims Act (FCA), and the Rehabilitation Act pursuant to 28 U.S.C. § 1331.

2. Venue is proper in the Northern District of Texas under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District. Plaintiff performed all work duties remotely from his home in Lubbock County, Texas, and Defendant directed its employment actions, communications, and adverse decisions into this District.

3. Plaintiff satisfied all administrative prerequisites. He filed Charge No. 31C-2025-00583 with the Equal Employment Opportunity Commission (EEOC) and received a Notice of Right-to-Sue on August 11, 2025, a copy of which is attached as Exhibit A. This Complaint is filed within 90 days of receipt of said notice.

**PARTIES**

1. Plaintiff Robert Trent is an individual and a resident of Lubbock, Texas. He was employed by Defendant as an Academic Coach from August 28, 2023, to March 12, 2025.

2. Defendant Capella University, LLC is a for-profit educational institution. At all relevant times, Defendant was an "employer" within the meaning of the ADA, employing 15 or more individuals.

3. Upon information and belief, Defendant is a recipient of federal financial assistance, including approximately $319 million in Title IV funds in the 2020–2021 fiscal year, making it a "program or activity" subject to the Rehabilitation Act.

**FACTUAL ALLEGATIONS**

**A. Strong Performance and Shifting Standards After Disability Disclosure**

1. Plaintiff began work at Capella on August 28, 2023. Through April 2024, he consistently received positive learner feedback and maintained above-average performance metrics.

2. On April 12, 2024, Plaintiff disclosed diagnoses of ADHD and Autism Spectrum Disorder to his supervisor. Plaintiff was, at all times, a qualified individual able to perform the essential functions of his position with or without reasonable accommodation.

3. Immediately following this disclosure, Defendant failed to engage in the ADA-required interactive process. Instead, Defendant fundamentally shifted Plaintiff's role without notice. While his title remained "Academic Coach," he was evaluated against a generic "customer service" standard, penalizing the very communication style the coaching role had previously encouraged.

**B. Disparate Treatment and Deliberate Refusal to Accommodate**

1. Within 32 days of Plaintiff's disclosure (May 14-20, 2024), Defendant cited him for "speaking rudely" behavior directly tied to his disclosed disabilities.

2. On June 4, 2024, Plaintiff received a Corrective Action Form (CAF) constituting a "final written warning," bypassing Defendant's own progressive discipline policy. On the form, Plaintiff again documented his diagnoses and explicitly requested accommodations. On June 5, 2024, within 24 hours and before any interactive process could occur, Associate

    Manager Caitlin McHugh responded in writing that "the role expectation of professional communication at all times with learners would not change, even with a potential accommodation," thereby predetermining that no accommodation would modify the very trait for which Plaintiff was being disciplined—his disability-related communication style.

3. On June 12, 2024, after his initial accommodation request was met with a pre-determined refusal, Plaintiff escalated a formal request to HR. Defendant refused to engage in any good-faith discussion or consider interim accommodations, conditioning any potential dialogue on the completion of a prohibitive and lengthy formal process. This conduct constitutes a failure to engage in the interactive process and a constructive denial of his request.

4. Shortly after Plaintiff's June 12, 2024 formal accommodation request, on or about July 2024, Defendant placed Plaintiff into an initial round of 'Behavioral Performance Coaching' without any written plan, metrics, or documentation. Then, on October 17, 2024, Defendant imposed a second, more formal round of 'Behavioral Performance Coaching' under the threat of termination. In both rounds, the coaching focused on altering Plaintiff's autism-related communication traits rather than engaging in the interactive process or providing reasonable accommodations.

5. On January 25, 2025, Plaintiff applied for an Academic Success Specialist position as a reasonable accommodation through reassignment. He met all minimum posted qualifications but was denied without an interview on February 3, 2025.

6. In early February 2025, Supervisor Deanna Olsen disciplined Plaintiff for comments allegedly "disparaging the university." Days later, on February 12, 2025, Olsen learned that a non-disabled colleague, Monile Bell-Malaaleu, had made similar statements, including encouraging a student to leave and providing improper academic help. Ms. Olsen issued no correction to the record or discipline to the non-disabled colleague, demonstrating disparate treatment based on disability.

## C. Whistleblower Disclosures and Protected Activity

1. Beginning in October 2024, Plaintiff engaged in protected activity by investigating and reporting what he reasonably believed were systemic violations involving the misuse of federal Title IV funds. His reports detailed practices that he reasonably believed constituted fraud on the United States, including:

2. **Improper Retention of Federal Funds through Deceptive Engagement Policy:** Plaintiff reasonably believed Defendant was unlawfully retaining federal funds through a deceptive academic engagement policy that functioned as follows: i. **Stated Policy:** Defendant informed students that academic engagement included communications with professors. ii. **Undisclosed Requirement:** Defendant internally required professors to

manually log these communications if and only if a student explicitly requested them, a procedural hurdle that was concealed from students and which Defendant knew was often omitted. iii. **Fraudulent Outcome:** As a result, students who complied with the stated policy were improperly withdrawn. This practice allowed Defendant to unlawfully retain Title IV funds by manipulating R2T4 calculations and to generate new Title IV revenue by forcing students to re-enroll and repay for the same courses.

3. **Concealment of Refund Rights:** During Hurricanes Helene and Milton, Defendant deliberately removed refund policy information from their primary student-facing platform: "campus", while maintaining this policy internally. This created a discriminatory two-tier system where refund access depended on random contact with informed staff rather than equal access to information. Defendant's practice of requiring supervisor pre-approval before formal submission created sampling bias in approval rates, concealing the true discriminatory impact on disaster-affected students who never learned of their rights. Plaintiff reasonably believed this constituted fraud through deliberate concealment of material information necessary for students to access Title IV refund entitlements.

4. **Discriminatory Application of Refund Policies**: Throughout late 2024, Plaintiff engaged in protected activity by reporting and opposing what he reasonably believed was a systemic practice of Defendant applying its student refund policies in a discriminatory, arbitrary, and fraudulent manner. This pattern of conduct, which created a two-tiered and discriminatory refund system, is **exemplified by the following representative instances:**

    a. **The Hurricane Victim (Rigid Scrutiny):** In November 2024, Plaintiff advocated for a refund i.e. Special Credit Request (SCR) for a student impacted by Hurricane Helene, a FEMA-declared disaster. Plaintiff explained the student's inability to engage was due to the necessary and time-consuming preparations for the storm. Plaintiff's supervisor, Dee Olsen, refused the request, rigidly enforcing a policy that the dates of non-engagement must perfectly align with the FEMA declaration dates, stating, "unless the dates line up, I cannot move forward with the SCR."

    b. **The Suspect Claim (Lax Approval):** Just weeks later, in December 2024, the same supervisor, Dee Olsen, instructed Plaintiff to process an SCR for a different student (Terry Lyn Bishop) based on a claim Plaintiff identified as likely fraudulent. Plaintiff reported to Ms. Olsen in writing that the claim was unsubstantiated, referenced a non-existent employee ("Alberto"), and failed to demonstrate how the alleged (misspelled) technical issue would have led to the circumstances that warranted an SCR. Despite this report, Ms. Olsen overruled Plaintiff's concerns and ordered him to process the questionable refund. **These contrasting events, which occurred just weeks apart under the same supervisor, are a snapshot of the broader pattern of conduct Plaintiff observed and reported.** This conduct involved the systemic denial of

      legitimate refund requests from disaster victims, while simultaneously approving questionable or fraudulent requests. Plaintiff reasonably believed this practice constituted a discriminatory misuse of Title IV funds and a fraud on the United States.

5. **False Certifications:** A program director admission in writing that known grade errors affecting federal aid eligibility could not be corrected due to institutional policy, while Defendant continued to certify compliance with federal regulations material to its receipt of Title IV funds.

6. **Failure to Provide Disability Accommodations:** Plaintiff reported instances of disabled students being denied required accommodations, including Student Disability Services (SDS) informing a legally blind student they "didn't need any accommodations" despite the student's explicit request. Additionally, Plaintiff learned from colleagues that professors were refusing to implement approved accommodations, with one colleague stating professors were "really not giving a learner what they are entitled to in terms of accommodations." While Plaintiff personally observed additional instances of accommodation denials, these specific examples formed the basis of his reasonable belief that Defendant was falsely certifying compliance with Section 504 while receiving federal funds.

7. On February 26, 2025, Plaintiff sent formal notice to HR and supervisors with the subject line: "Formal Notice of Legal Violations and Protected Whistleblower Disclosure," explicitly putting Defendant on notice of his protected status.

## D. Retaliation, Evidence Tampering, and Termination

1. On February 7-10, 2025, after Plaintiff reported misconduct, email forwarding was disabled without notice on his university outlook account for 33 hours, obstructing his ability to preserve evidence.

2. On February 21, 2025, Plaintiff requested his official personnel file pursuant to Minnesota Statute § 181.961. On February 28, 2025, the document Defendant produced in its official response, purporting to be the final CAF from that disciplinary action, had been materially altered. Specifically: a. Plaintiff's disability disclosure and accommodation request had been removed. b. Plaintiff's signature had been removed. c. The date of the document had been changed from June 4, 2024, to May 28, 2024, backdating it to a time *before* the disciplinary meeting even occurred. This act of providing a falsified, backdated document in response to a lawful request for an official personnel file constitutes evidence tampering intended to conceal Defendant's refusal to accommodate.

3. On February 24, 2025, Defendant denied Plaintiff's eligible PTO request and conducted an accelerated performance review. The review lacked specific examples of deficient performance, included contradictory statements from supervisors, and targeted

communication traits linked to Plaintiff's disclosed disabilities. Although Defendant stated during the review that Plaintiff would be placed on a Performance Improvement Plan (PIP), no such plan was ever provided. Upon information and belief, Defendant's own internal policies require that any PIP be based on objective data and be reviewed and approved by Human Resources. Defendant failed to create or implement a PIP because no objective data existed to support one, and therefore it could not withstand HR scrutiny. Plaintiff was terminated 16 days later.

4. On March 11, 2025, Defendant's HR concluded its inquiry into Plaintiff's complaints, finding "no evidence" of discrimination or harassment. This conclusion was reached without interviewing Plaintiff.

5. Plaintiff was terminated the next day, on March 12, 2025. In its subsequent filing with the Texas Workforce Commission, Defendant stated only "Details not available" for the final incident leading to discharge and admitted it was "not contesting their unemployment claim."

6. On March 14, 2025, Defendant's parent company, Strategic Education, Inc. ("SEI"), acting on behalf of Defendant, demanded PTO repayment in a manner contrary to written policy.

7. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered lost wages and benefits, emotional distress, and reputational harm.

## COUNT I — AMERICANS WITH DISABILITIES ACT (ADA) Disability Discrimination and Retaliation (42 U.S.C. §§ 12112, 12203)

1. Plaintiff incorporates all prior paragraphs by reference.

2. Plaintiff is a qualified individual with a disability under 42 U.S.C. § 12111(8). His ADHD and Autism Spectrum Disorder substantially limit major life activities including, but not limited to, communicating, interacting with others, concentrating, and executive functioning.

3. Defendant discriminated against Plaintiff on the basis of his disability by: (a) subjecting him to disparate treatment; (b) failing to provide reasonable accommodations; (c) refusing to engage in the interactive process; and (d) denying him reassignment to a vacant position for which he was qualified.

4. Defendant retaliated against Plaintiff for engaging in protected activity—requesting accommodation—by escalating discipline, altering personnel documents, and ultimately terminating his employment, in violation of 42 U.S.C. § 12203(a).

5. Defendant's proffered reasons for its adverse actions are pretext for unlawful discrimination and retaliation. Evidence of pretext includes the close temporal proximity

between protected activity and adverse actions, Defendant's shifting and contradictory justifications, its deviation from its own progressive discipline policies, its disparate treatment of non-disabled comparators, and its post-hoc alteration of personnel records.

## COUNT II — FALSE CLAIMS ACT (FCA) Retaliation (31 U.S.C. § 3730(h))

1. Plaintiff incorporates all prior paragraphs by reference.

2. Plaintiff engaged in protected activity under 31 U.S.C. § 3730(h) by undertaking lawful acts in furtherance of efforts to stop one or more violations of the FCA. Plaintiff reasonably believed Defendant was violating the FCA by knowingly making, or causing to be made, false records material to false claims and by knowingly avoiding an obligation to pay or transmit money to the Government in violation of 31 U.S.C. § 3729(a)(1).

3. Plaintiff's belief was objectively reasonable. The protected activity included investigating and reporting Defendant's improper retention of federal funds through (a) false certifications of student engagement that were material to Defendant's receipt of Title IV funds and (b) its failure to make required R2T4 refunds, which constitutes a "reverse false claim" under 31 U.S.C. § 3729(a)(1)(G).

4. Defendant had knowledge of Plaintiff's protected activity, including through his formal notice of February 26, 2025. Defendant terminated Plaintiff 14 days after his formal notice, evidencing but-for causation.

## COUNT III — REHABILITATION ACT, SECTION 504 Disability Discrimination (29 U.S.C. § 794)

1. Plaintiff incorporates all prior paragraphs by reference.

2. As a recipient of federal financial assistance, Defendant is subject to Section 504 of the Rehabilitation Act.

3. Upon information and belief, Plaintiff's work included monitoring student engagement metrics that Defendant used to determine continued enrollment and eligibility for federal financial aid disbursements, connecting his position to Defendant's federally-funded programs.

4. Defendant discriminated against Plaintiff solely by reason of his disability by denying him reasonable accommodations and subjecting him to disparate treatment, thereby denying him the benefits of employment in its federally funded programs. In the alternative, to the extent a different causation standard applies, Plaintiff's disability was a but-for cause of the adverse actions.

## COUNT IV — AMERICANS WITH DISABILITIES ACT (ADA) Interference (42 U.S.C. § 12203(b))

1. Plaintiff incorporates all prior paragraphs by reference.

2. Defendant interfered with, coerced, and intimidated Plaintiff in his exercise and enjoyment of rights granted under the ADA, in violation of 42 U.S.C. § 12203(b).

3. Specifically, Defendant interfered with Plaintiff's ADA rights by materially altering personnel documents to remove evidence of his accommodation request and by locking him out of his email account, thereby obstructing his ability to preserve evidence related to his ADA claims.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Robert Trent respectfully requests that this Court enter judgment against Defendant Capella University, LLC and grant the following relief: A. A declaration that Defendant's actions violated the ADA, the FCA, and the Rehabilitation Act; B. An award of back pay, front pay, and lost benefits; C. An order for Plaintiff's reinstatement to his former position or a comparable one; or, in the alternative, an award of front pay; D. An award of compensatory damages for emotional distress, suffering, and reputational harm; E. An award of punitive damages under the ADA for Defendant's reckless indifference to Plaintiff's federally protected rights; F. An award of double back pay, interest, and special damages under 31 U.S.C. § 3730(h); G. An award of reasonable attorneys' fees and litigation costs; H. An order for injunctive relief requiring Defendant to correct Plaintiff's employment records and implement ADA-compliant policies and training; I. An award of pre- and post-judgment interest; and J. Such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

**PRESERVATION OF EVIDENCE NOTICE**

Plaintiff requests that Defendant take immediate steps to preserve all potentially relevant evidence, including but not limited to all electronically stored information (ESI), communications concerning Plaintiff, original and altered versions of all disciplinary and employment documents, accommodation request records, and performance and disciplinary records of similarly situated employees.

Dated: August 18, 2025

Respectfully submitted,

*/s/ Robert Trent/*

Robert Trent (Pro Se)

6811 67th St. Lubbock Tx 79424

806-507-1592

Robert.trent0139@gmail.com

**EXHIBIT A – EEOC Notice of Right-to-Sue**

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
San Antonio Field Office

5410 Fredericksburg Road, Suite 200
San Antonio, TX 78229-3555
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
San Antonio Direct Dial: (210) 640-7530
FAX (210) 281-2522
Website: www.eeoc.gov

# DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued on: August 11, 2025

**To:** Robert Trent
6811 67th
Lubbock, TX 79424

**Re:** Robert Trent v. Capella University Inc
EEOC Charge Number: 31C-2025-00583

EEOC Representative and email:   Hector Colon-Padro
State, Local and Tribal Program Manager
hector.colon-padro@eeoc.gov

## DETERMINATION OF CHARGE

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed. The EEOC is terminating its processing of this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is the official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) received this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.) Please retain this notice for your records.

On behalf of the Commission:

For

HECTOR COLON-PADRO   Digitally signed by HECTOR COLON-PADRO
Date: 2025.08.11 09:58:51 -05'00'

Norma J. Guzman
Field Director

cc:   Terran C Chambers
Faegre Drinker Biddle & Reath LLP
2200 Wells Fargo Center, 90 South Seventh Street
Minneapolis, MN 55402

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) received the document. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE

To request a copy of your charge file, contact the Fair Employment Practices Agency that investigated your charge.

### NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at:
http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability**

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- ✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.
- ✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions,** such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
- ✓ **Only one** major life activity need be substantially limited.
- ✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
- ✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.
- ✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

- ✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
- ✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.
- ✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability".

*Note:* Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability. For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

 Gmail

Robert Trent <robert.trent0139@gmail.com>

## Closure document for EEOC Charge 31C-2025-00583 Trent vs Capella University Inc
1 message

**HECTOR COLON-PADRO** <HECTOR.COLON-PADRO@eeoc.gov>　　　　Mon, Aug 11, 2025 at 10:01 AM
To: "robert.trent0139@gmail.com" <robert.trent0139@gmail.com>

Hello,

The attached correspondence is the EEOC's closure document for the above-mentioned EEOC Charge. Please note that this document is being sent via email only.

Respectfully,

Hector Colon-Padro

State, Local and Tribal Program Manager

U.S. Equal Employment Opportunity Commission

Dallas District Office

San Antonio Field Office
Email: hector.colon-padro@eeoc.gov

📎 2025-08-11 NRTS 31C-2025-00583 Trent.pdf
326K

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFF: Robert Trent

**DEFENDANTS**
Capella University, LLC

**(b)** County of Residence of First Listed Plaintiff: Lubbock County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Hennepin County, MN (Minneapolis)
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Pro Se, 6811 67th st. Lubbock Texas, 806-507-1592

Attorneys *(If Known)*: Terran C. Chambers. Faegre Drinker Biddle & Reath LLP
2200 Wells Fargo Center, 90 S. 7th St.
Minneapolis, MN 55402
terran.chambers@faegredrinker.com

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [X] 3 Federal Question (U.S. Government Not a Party)
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS — PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [X] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**TORTS — PERSONAL INJURY**
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**PRISONER PETITIONS**
*Habeas Corpus:*
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty
*Other:*
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*: 42 U.S.C. § 12112 et seq. (ADA); 31 U.S.C. § 3730(h) (FCA retaliation)

Brief description of cause: Pro se lawsuit for disability discrimination, failure to accommodate, and whistleblower retaliation by former employer.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND** $100,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [X] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY *(See instructions)*

JUDGE _____   DOCKET NUMBER _____

**DATE:** August 18, 2025

**SIGNATURE OF ATTORNEY OF RECORD:** *Robert Trent*

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

Robert Trent
6811 67th St.
Lubbock, TX 79424
806-507-1592
robert.trent0139@gmail.com

Date: August 18, 2025

Clerk of the Court
U.S. District Court – Northern District of Texas
1205 Texas Avenue, Room 209
Lubbock, TX 79401

Re: Robert Trent v. Capella University, LLC
Civil Complaint – Pro Se Filing

Dear Clerk,

Enclosed please find the following documents for filing in the above-referenced matter:

Complaint and Demand for Jury Trial (original, signed)

Civil Cover Sheet (JS-44)

Summons (AO-440) – for issuance

Certificate of Interested Persons

Motion for Leave to E-File Pro Se

EEOC Right-to-Sue Letter (copy)

Also enclosed is my check in the amount of $405.00 made payable to Clerk, U.S. District Court for the filing fee.

Please issue the summons and return file-stamped copies to me in the enclosed self-addressed stamped envelope for my records.

Thank you for your assistance.

Respectfully,

*Robert Trent*

Robert Trent

