# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### LUBBOCK DIVISION

| | | |
|---|---|---|
| ROBERT TRENT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case 5:25-cv-00176-H-BV |
| | § | |
| CAPELLA UNIVERSITY, LLC, | § | |
| | § | |
| Defendant. | § | |
| | § | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT
## PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Defendant Capella University, LLC ("Capella"), by and through the undersigned counsel, respectfully submits this Memorandum of Law in support of its Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## STATEMENT OF RELEVANT FACTS[1]

### A. Plaintiff's Employment with Capella.

Capella is an educational institution that provides flexible, online degree programs to students. (*See* Complaint ("Compl.") at Parties ¶ 2; About Capella University, https://www.capella.edu/capella-experience/about/.) Capella receives Title IV funds for students who apply for financial assistance through the federal government. (*See* Compl. at Parties ¶ 3;

---

[1] While many of the facts Plaintiff alleges are inaccurate and Capella vehemently denies any allegations of wrongdoing, Capella accepts them as true solely for purposes of this Motion. Capella also incorporates documents that are referenced by the Complaint and central to Plaintiff's claims in this Motion to Dismiss. *See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

1

Overview of Title IV, https://fsapartners.ed.gov/knowledge-center/library/functional-area/Overview%20of%20Title%20IV.)

Plaintiff worked at Capella from August 28, 2023 to March 12, 2025 as an Academic Coach. (Compl. at Parties ¶ 1.) Academic Coaches engage with Capella students, or "learners," and support learners with tuition refunds, disability accommodations, and course engagement, among other things. (*Id.* at Factual Allegations ¶¶ B.2, C.4.b, C.6; Count III ¶ 3.) As an Academic Coach, Plaintiff was expected to engage in "professional communication" with learners and was evaluated based on his customer service. (*Id.* at Parties ¶ 3; Factual Allegations ¶ B.2.)

Plaintiff alleges he has ADHD and Autism Spectrum Disorder, which limit his executive functions and abilities to communicate, interact with others, and concentrate. (*Id.* at Count I ¶ 2.) On April 12, 2024, Plaintiff disclosed these diagnoses to his supervisor but did not request any accommodation. (*Id.* at Factual Allegations ¶ A.2.)

**B. Plaintiff's Progressive Discipline and Subsequent Inquiry about Accommodation.**

During his employment with Capella, Plaintiff received discipline and coaching for unprofessional communication with learners. (*Id.* at Factual Allegations ¶¶ B.1, B.2, B.4, B.6.)

On June 4, 2024, Plaintiff received a Corrective Action for engaging in rude and unprofessional communications with learners. (*Id.* at Factual Allegations ¶ B.1; *see* Exhibit A[2], Appendix ("APP") 1-2.) The Corrective Action referenced two incidents of unprofessional communication in May 2024. (*See* Exhibit A, APP 1-2.) In the first incident, Plaintiff communicated rudely with a learner on the phone and hung up on them. (*Id.*) In the second incident, Plaintiff used rude and unprofessional language in an email to a learner. (*Id.*) After reviewing these communications, Capella determined that Plaintiff's communications did not

---

[2] Exhibit A is incorporated by reference by Plaintiff's Complaint at Factual Allegations ¶ B.2.

DMS_US.374300558.2

align with Capella's expectation that staff respond to all learners professionally, with empathy and courtesy, and display good judgment. (*Id.*) The Corrective Action warned Plaintiff that "further incidents of the same or similar behaviors, policy violation, or evidence of poor judgment w[ould] result in further disciplinary action up to and including termination of employment." (*Id.*) Plaintiff signed the Corrective Action. (*See id.*) Plaintiff noted on the Corrective Action that he had been diagnosed with autism spectrum disorder and attention-deficit/hyperactivity disorder, and that problems with his medication and other "work related stressors" "have and [would] continue to" impact his communication. (*Id.*)

On June 4, 2024, Plaintiff returned the signed Corrective Action Form to Associate Manager Caitlin McHugh ("McHugh") by email. (Exhibit B[3], APP 3-4; *see also* Compl. at Factual Allegations ¶ B.2.) In the same email, Plaintiff wrote: "I would also like to use this email thread to ask if we can discuss past accommodations that Capella has provided to its neurodivergent employees as well as a generalized overview of what that process looks like." (*Id.*) On June 5, 2025, McHugh responded by asking the People Operations Partner on the email thread for additional guidance to give to Plaintiff, and reminding Plaintiff that even with accommodations, Plaintiff would still be expected to fulfill the essential functions of his job, including with respect to respectful communication:

> Damon, would Robert need to email Benefits and the general HR inbox to start a conversation about any potential accommodations, or is that something you can assist with?
>
> One thing to note here, Robert, is that if an accommodation is available, the role expectations would still remain the same (i.e. the role expectation of professional communication at all times with learners would not change, even with a potential accommodation).

---

[3] Exhibit B is incorporated by reference by Plaintiff's Complaint at Factual Allegations ¶ B.2.

DMS_US.374300558.2

(*Id.*; *see also* Compl. at Factual Allegations ¶ B.2.) The People Operations Manager then replied: "Robert please reach out to the HR inbox regarding potential accommodations. Someone in benefits will walk you through what that looks like and next steps! The HR inbox is humanresource@strategiced.com." (Exhibit B, App 3-4.)

On June 12, 2024, Plaintiff emailed HR: "Hi, I was curious if you could tell me what kind of accommodations SEI has given to neurodivergent employees in the past and maybe if we could have a conversation about what the process would be like." (Exhibit C[4], APP 5-8; *see also* Compl. at Factual Allegations ¶ B.3.) The next day, a Total Rewards Analyst responded to Plaintiff's inquiry:

> Hi Robert,
>
> Accommodation requests are individual in nature and based on each employee's unique disability. We would be unable to discuss what has previously been provided in the past.
>
> I can provide you with the paperwork for a request if you would like. You would then need to talk to your provider or primary care doctor to see what accommodations are needed for you to perform your job duties. This would then be presented to HR/SEI as part of the interactive process.
>
> Please let me know if would like the paperwork to start the process.
>
> Thanks!
> Jennifer

(*Id.; see also* Compl. at Factual Allegations ¶ B.3.) According to Plaintiff, this amounted to "conditioning any potential dialogue on the completion of a prohibitive and lengthy formal process," constituting a "failure to engage in the interactive process and a constructive denial of his request." (Compl. at Factual Allegations ¶ B.3.)

### C. Plaintiff Receives Ongoing Coaching for Performance Issues.

---

[4] Exhibit C is incorporated by reference by Plaintiff's Complaint at Factual Allegations ¶ B.3.

Capella continued coaching Plaintiff on performance issues. (*Id.* at Factual Allegations ¶ B.4.) On October 17, 2024, after Plaintiff hung up the phone on another learner, Capella imposed a more formal coaching plan, focused on Plaintiff's communication with learners—something he had been counseled on since at least June of 2024. (*Id.*; see also <u>Exhibit D</u>[5], APP 9-10.) In early February 2025, Associate Manager Deanna Olsen ("Olsen") met with Plaintiff to address a call with a learner in which Plaintiff disparaged the university. (Compl. at Factual Allegations ¶ B.6.)

### D. After Receiving Poor Performance Review, Plaintiff Complains of Unfair Treatment and Retaliation.

On February 25, 2025, Mr. Trent received his performance evaluation (called a "Know Where You Stand" or "KWYS") for 2024. (*Id.* at Factual Allegations ¶ D.3; <u>Exhibit E</u>[6], APP 11-15.) Based on the myriad performance concerns demonstrated during 2024, Mr. Trent received a "Development Needed" rating and was informed he would be placed on a Performance Improvement Plan ("PIP"). (*Id.*)

Following his negative performance review, Plaintiff sent an email to HR and supervisors on February 26, 2025 with the subject line "Formal Notice of Legal Violations and Protected Whistleblower Disclosure," in which he expressed dissatisfaction and disagreement with the assessment of his performance, alleging "unfair treatment" and "retaliation." (<u>Exhibit F</u>[7], APP 16-17; *see also* Compl. at Factual Allegations ¶ C.7.) Plaintiff added to that email one single line about alleged protected conduct: "I also want to formally document that I engaged in protected whistleblower activity on February 7, 2025." (<u>Exhibit F</u>, APP 16-17.) Plaintiff provided no additional details regarding his alleged "whistleblower activity." (*See id.*)

### E. HR Investigates Plaintiff's Complaint and Finds No Evidence of Wrongful Conduct.

---

[5] Exhibit D is incorporated by reference by Plaintiff's Complaint at Factual Allegations ¶ B.4.
[6] Exhibit E is incorporated by reference by Plaintiff's Complaint at Factual Allegations ¶ D.3.
[7] Exhibit F is incorporated by reference by Plaintiff's Complaint at Factual Allegations ¶ C.7.

HR investigated the complaints raised by Plaintiff in February 2025, and on March 11, 2025, concluded its inquiry, finding no evidence of discrimination, harassment, or retaliation. (*See* Compl. at Factual Allegations ¶ D.4; <u>Exhibit G</u>[8], APP 18.) On March 12, 2025, Capella terminated Plaintiff's employment. (*See* Compl. at Factual Allegations ¶ D.5.)

### F. Plaintiff's EEOC Charge and Complaint.

On May 5, 2025, Plaintiff filed a Charge of Discrimination against Capella with the Equal Employment Opportunity Commission ("EEOC"). (Compl. at Jurisdiction and Venue ¶ 3; *see* <u>Exhibit H</u>[9], APP 19-27.) In his Charge, Plaintiff alleged disability discrimination, failure to accommodate, and retaliation under the Americans with Disabilities Act ("ADA"). (<u>Exhibit H</u>, APP 19-27.) After receiving a Notice of Right to Sue, Plaintiff filed this Complaint. (Compl. at Jurisdiction and Venue ¶ 3.) Plaintiff is pro se. (*See* Compl.)

In Count I of his Complaint, Plaintiff alleges that Cappella discriminated against him on the basis of disability, including by failing to accommodate him and retaliating against him, in violation of the ADA. In Count II, Plaintiff alleges that Capella retaliated against him for "undertaking lawful acts in furtherance of efforts to stop one or more violations of the [False Claims Act]." In Count III, Plaintiff alleges that he suffered disability discrimination in violation of Section 504 of the Rehabilitation Act. In Count IV, Plaintiff alleges that Capella interfered with his rights under the ADA.

By this motion, Capella moves this Court to dismiss Plaintiff's Complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

---

[8] Exhibit G is incorporated by reference by Plaintiff's Complaint at Factual Allegations ¶ D.4.
[9] Exhibit H is incorporated by reference by Plaintiff's Complaint at Jurisdiction and Venue ¶ 3.

DMS_US.374300558.2

## LEGAL STANDARD

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), Plaintiff must make sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id.* Thus, a complaint must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

In evaluating a Rule 12(b)(6) motion, a court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P.*, 594 F.3d at 387 (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir.2000)). "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to h[is] claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing *Collins*, 224 F.3d at 498–99). A court may also consider public records of which the court may take judicial notice. *Gonzalez v. Bayer Healthcare Pharms., Inc.*, 930 F. Supp. 2d 808, 811 (S.D. Tex. 2013). At the motion to dismiss stage, the Court "must accept non-speculative and non-conclusory factual allegations as true[.]" *Schelling v. Microvast Holdings, Inc.*, No. 4:23-CV-4565, 2025 WL 2430613, at *1, n. 1 (S.D. Tex. Aug. 22, 2025).

DMS_US.374300558.2

A "*pro se* litigant is not 'exempt . . . from compliance with relevant rules of procedural and substantive law.'" *NCO Fin. Systems, Inc. v. Harper–Horsley*, No. 07-4247, 2008 WL 2277843, at *3 (E.D. La. May 29, 2008) (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981)). As such, a *pro se* plaintiff's complaint "must set forth facts giving rise to a claim on which relief may be granted." *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993) (citation omitted). A "court is not required to search for or try to create causes of actions . . . for *pro se* plaintiffs." *Kiper v. Ascension Parish Sch. Bd.*, No. 14-313, 2015 WL 2451998, at *1 (M.D. La. May 21, 2015)).

## LEGAL ANALYSIS

Plaintiff has failed to allege the elements of his claims for disability discrimination (Counts I and III), failure to accommodate (Count I), ADA retaliation (Count I), False Claims Act ("FCA") retaliation (Count II), and ADA interference (Court IV) with the requisite supporting facts. He has also failed to exhaust administrative remedies with respect to his claim for ADA interference. Accordingly, Plaintiff's Complaint must be dismissed.

### I.  Plaintiff's Disability Discrimination Claims (Counts I and III) Fail.

In Counts I and III, Plaintiff alleges that Capella discriminated against him on the basis of disability in violation of the ADA and Section 504 of the Rehabilitation Act.

To establish a prima facie case of disability discrimination under either the ADA or Section 504 of the Rehabilitation Act, a Plaintiff must allege, as a preliminary matter, that he is a qualified individual with a disability. *Ramirez v. PHI Health, LLC*, 762 F.Supp.3d 596 (S.D. Tex. 2025) (citing *Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1024 (5th Cir. 1999)) (ADA); *Sapp v. Donohoe*, 539 Fed.Appx. 590, 595 (5th Cir. 2013) (Section 504). A "qualified individual with a disability" means an "individual with a disability who, with or without reasonable accommodations can perform the essential functions of the employment position that such individual holds or

8

desires." 42 U.S.C. § 12111(8); *see also Bradley v. Univ. of Texas M.D. Anderson Cancer Ctr.*, 3 F.3d 922, 924 (5th Cir. 1993) (stating, for Section 504, that an "otherwise qualified" person can perform the essential functions of the job in question).

Here, Plaintiff's disability discrimination claims fail on the face of his pleadings because his allegations make plain that he is *not* a qualified individual with a disability. Plaintiff alleges that he was in the role of Academic Coach (Compl. at Factual Allegations ¶ A.3) and that Capella informed him that professional communication with learners was an essential function of that role (*id.* at Factual Allegations ¶ B.2). But Plaintiff admits that because of his disability, he could not communicate respectfully and professionally. (*See id.* at Factual Allegations ¶¶ B.2 and B.4 (referring to his "autism-related communication traits" and his "disability-related communication style")). Indeed, Plaintiff expressly informed Capella that he believed his condition had, and would continue to, impact his ability to respectfully communicate. (APP 2.)

Plaintiff does not allege he could have fulfilled this expectation with an accommodation. (*See id.* at Factual Allegations ¶¶ B.2 and B.4.) Instead, Plaintiff asserts that Capella was legally required to accommodate his inability to communicate respectfully by excusing him from the expectation altogether. (*See id.* at Factual Allegations ¶ B.2.) Indeed, by this lawsuit, Plaintiff attempts to hold Capella liable for failing to accommodate "the very trait for which Plaintiff was being disciplined—his disability-related communication style." (*Id.*)

An individual who seeks to be exempted from an essential function of his job based on a disability is not a qualified individual with a disability for purposes of a discrimination claim. *McDaniel v. IntegraCare Holdings, Inc.*, 901 F.Supp.2d 863 (N.D. Tex. 2012) (quoting *Burch v. City of Nacogdoches,* 174 F.3d 615, 619 (5th Cir.1999)) ("Further, the suggestion by plaintiff that defendant should have removed an essential function of her position is unsupported by any legal authority. The opposite is correct: '[t]he ADA does not require an employer to relieve an employee

of any essential functions of his or her job[.]'"). Because Plaintiff's Complaint makes plain that he wished to be excused from an essential function of his job, not accommodated to permit him to perform an essential function of his job, he is not a qualified individual with a disability under applicable law. Plaintiff fails to state a claim under Rule 12 and Counts I and III must be dismissed insofar as they allege disability discrimination.

## II.     Plaintiff's Failure to Accommodate Claim (Count I) Fails.

In Count I, Plaintiff also alleges that Capella discriminated against him on the basis of disability by failing to provide him with reasonable accommodations.

The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability" which includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(a), (b)(5)(A). To prevail on a failure to accommodate claim, the plaintiff must prove: (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by Capella; and (3) the Capella failed to make reasonable accommodations for such known limitations. *Amedee v. Shell Chem., L.P.*, 953 F.3d 831, 837 (5th Cir. 2020) (internal citations omitted).

If Plaintiff required an accommodation, it was Plaintiff's responsibility to request one. *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009); *see also Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007) ("It is the plaintiff's burden to request reasonable accommodations."); *Cato v. First Fed. Cmty. Bank*, 668 F. Supp. 2d 933, 947 (E.D. Tex. 2009) ("[A]n employee must make a request for accommodation to trigger the protections of the ADA."). This requirement ensures that the employer has knowledge of the alleged disability and limitations imposed by it. *See id.*

10

"Plaintiffs ordinarily satisfy the knowledge element by showing that they identified their disabilities as well as the resulting limitations to [their employer] and requested an accommodation in direct and specific terms." *Sligh v. City of Conroe, Tex.*, 87 F.4th 290, 304 (5th Cir. 2023) (quoting *Smith v. Harris County*, 956 F.3d 311, 317 (5th Cir. 2020)). Failure to request an accommodation, particularly where an employee's disability is not obvious, will doom a claim. *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 587 (5th Cir. 2020) (holding that a plaintiff's failure-to-accommodate claim failed on a "fundamental level" where he did not request an accommodation). "[A]n employer cannot be found to have violated the ADA when responsibility for the breakdown of the 'informal interactive process' is traceable to the employee and not the employer." *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 224 (5th Cir. 2011) (quoting *Loulseged v. Akzo Nobel Inc.,* 178 F.3d 731, 736 (5th Cir.1999)).

Importantly, the knowledge requirement demands more than simply making the employer aware of a disability. The Fifth Circuit has explained "it is important to distinguish between an employer's knowledge of an employee's disability versus an employer's knowledge of any limitations experienced by the employee as a result of that disability. This distinction is important because the ADA requires employers to reasonably accommodate limitations, not disabilities." *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 164 (5th Cir. 1996) (holding that informing employer of a bipolar disorder diagnosis alone was insufficient to support a failure to accommodate claim because plaintiff did not inform employer of a "*limitation*" caused by his disorder).

Plaintiff's failure to accommodate claim fails at the outset because Plaintiff was not a qualified individual with a disability under the ADA, as set forth above. *See supra* Section I.

But further, Plaintiff's failure to accommodate claim fails for the additional reason that Plaintiff simply never completed Capella's accommodation request process. Plaintiff's Complaint

11

makes this clear: Plaintiff does not allege that he made a single request for an accommodation "in direct and specific terms" at any time.

Instead, Plaintiff alleges that he inquired about accommodations to his supervisor on June 4, 2024, and from HR on June 12, 2024. (Compl. at Factual Allegations ¶ B.2, B.3.) But when Capella invited Plaintiff to complete its standard process, it was "conditioning any potential dialogue on the completion of a prohibitive and lengthy formal process," which, according to Plaintiff, "constitute[d] a failure to engage in the interactive process and a constructive denial of his request." (*Id.* at Factual Allegations ¶ B.3.)

The law holds otherwise. "An employer may require an employee to provide documentation . . . sufficient to substantiate the limitation that allegedly requires an accommodation." *Delaval v. PTech Drilling Tubulars, LLC*, 824 F.3d 476, 482 (5th Cir. 2016) (internal quotation and citation omitted). "Where an employee refuses to provide such documentation, we have held that he causes a breakdown in the interactive process[.]" *Id.* (internal citation omitted).

Plaintiff has not stated a plausible claim for failure to accommodate under the ADA because (1) he is not a qualified individual with a disability; and (2) he does not allege that he completed Capella's standard process to request a single accommodation at any time. Accordingly, Count I, insofar as it alleges a failure to accommodate, fails.

### III. Plaintiff's Retaliation Claim (Count I) Fails

In Count I, Plaintiff also alleges that Capella retaliated against him "for engaging in protected activity—requesting accommodations—by escalating discipline, altering personnel documents, and ultimately terminating his employment[.]" (Compl. at Count I ¶ 4.)

12

To establish a prima facie case of retaliation, Mr. Trent must show: (1) he engaged in protected conduct; (2) he suffered an adverse employment action; and (3) a causal connection exists between the two. *Williams v. BRFHH Shreveport, LLC*, 801 Fed.Appx. 921 (5th Cir. 2020).

As explained above, the ADA requires "making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). "Making a request for a reasonable accommodation under the ADA may constitute engaging in a protected activity[]" to establish a retaliation claim under the ADA. *Tabatchnik v. Cont'l Airlines*, 262 F. App'x 674, 676 (5th Cir. 2008) (internal citations omitted). However, if an employee is not "an otherwise qualified individual with a disability" and does not request "reasonable accommodations" for "known physical or mental limitations," he has not engaged in protected activity. *Id.* (dismissing plaintiff's ADA retaliation claim at summary judgment for lack of protected activity where plaintiff requested flex time during lunch breaks to attend medical appointments but did not have a known disability). For example, in *Manson v. Careington Int'l Corp.,* on a motion to dismiss, the court rejected a failure-to-accommodate claim wherein plaintiff pleaded she had "'informed Defendant of her disabilities and the consequences thereof at the time of her diagnosis," because she failed to plead that "she informed Defendant of the reasonable accommodations she would require . . . " No. 420CV00916SDJCAN, 2021 WL 3912536, at *5 (E.D. Tex. Aug. 6, 2021), *report and recommendation adopted,* No. 4:20-CV-916-SDJ, 2021 WL 3884252 (E.D. Tex. Aug. 31, 2021) (quotation omitted) (noting that where the disability and necessary reasonable accommodations are not "open, obvious, and apparent to the

DMS_US.374300558.2

employer, the initial burden rests primarily upon the employee . . . to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations.").[10]

Plaintiff alleges that he engaged in protected activity by "requesting accommodation." (Compl. at Count I ¶ 4.) For the reasons explained above, Plaintiff has not pled facts sufficient to show that he was a qualified individual with a disability or that he ever made a reasonable request for accommodation. *See supra* Sections I and II. Accordingly, Plaintiff cannot establish that he engaged in any protected activity, and his ADA retaliation claim fails at step one of the prima facie analysis.[11] For these reasons, Accordingly, Count I, insofar as it alleges retaliation, fails.

### IV. Plaintiff's ADA Interference Claim (Count IV) Fails.

In Count IV, Plaintiff alleges that "Defendant interfered with [his] ADA rights by materially altering personnel documents to remove evidence of his accommodation request and by locking him out of his email account, thereby obstructing his ability to preserve evidence related to his ADA claims." (Compl. at Count IV ¶ 3.) Plaintiff's ADA interference claim must be dismissed because Plaintiff failed to exhaust administrative remedies and because Plaintiff cannot make out a prima facie case of ADA interference.

---

[10] *See also Stancu v. Highland Hilton/HEI Hotels & Resorts*, No. 3:23-CV-00894-L-BT, 2024 WL 3166447, at *6 (N.D. Tex. June 6, 2024), *report and recommendation adopted*, No. 3:23-CV-894-L-BT, 2024 WL 3172717 (N.D. Tex. June 24, 2024), *aff'd sub nom. Stancu v. Highland Hilton*, No. 24-10627, 2025 WL 502079 (5th Cir. Feb. 14, 2025) (granting motion to dismiss plaintiff's ADA retaliation claim because plaintiff failed to adequately allege that he engaged in protected activity under the ADA, where plaintiff alleged that he had requested an accommodation for a sprained ankle and hernia, but failed to plead facts showing that his injuries were disabilities within the meaning of the ADA).

[11] Plaintiff's ADA retaliation claim also fails to the extent he claims Capella retaliated against him by "altering his personnel file," as such action would not alter the terms, conditions or privileges of his employment to rise to the level of adverse action. (Compl. at Count I ¶ 4.) An "adverse employment decision" is a decision that alters the "terms, conditions, or privileges" of employment, such as hiring, firing, changes to compensation, and other changes to the terms, conditions, and privileges of employment. *See* 2 U.S.C. § 12112(a); *Strife v. Aldine Indep. Sch. Dist.*, 138 F.4th 237, 249 (5th Cir. 2025).

"Before filing suit in federal court for a violation of the ADA, a plaintiff must exhaust h[is] administrative remedies, which include the timely filing of a charge of discrimination with the EEOC." *Adams v. Columbia/HCA of New Orleans, Inc.*, No. 22-30389, 2023 WL 2346241, at *2 (5th Cir. March 3, 2023) (citing *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996)). The scope of a plaintiff's federal complaint is limited to discrimination like or related to the EEOC charge's allegations and "the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination." *Adams*, 2023 WL 2346241, at *2. "A plaintiff's failure to comply with the ADA's exhaustion requirement is grounds for dismissal." *Id.*; *see also Equal Emp. Opportunity Comm'n v. STME, LLC*, 309 F. Supp. 3d 1207, 1216 (M.D. Fla. 2018), *aff'd*, 938 F.3d 1305 (11th Cir. 2019) (where plaintiff sought leave to amend complaint to add ADA interference claim, but there were no facts in plaintiff's Charge that referenced coercion, intimidation, or threats made to prevent plaintiff from enjoying purported rights under the ADA, Court denied leave to amend because the claim would be dismissed for failure to exhaust).

Plaintiff's EEOC Charge makes no mention of interference or the like. (*See* Exhibit H, APP 19-27.) Indeed, in his Charge (which was written with the assistance of counsel), Plaintiff only raised claims of disability discrimination, failure to accommodate, and retaliation under the ADA. (*See id.*) Because Plaintiff did not allege ADA interference during the agency proceedings, Capella did not have an opportunity to respond to that claim and the EEOC had no opportunity to investigate it. Accordingly, Plaintiff's ADA interference claim must be dismissed for failure to exhaust administrative remedies.

Plaintiff's ADA interference claim must also be dismissed because Plaintiff has not pled facts that satisfy the elements of the claim. The Fifth Circuit has not articulated a specific test to state an ADA interference claim, but has held that at least three elements are required: (1) coercion, intimidation, threats, or interference toward an individual, (2) on the basis of that

individual's exercise or enjoyment, or having exercised or enjoyed, or aiding or encouraging others in exercising or enjoying, (3) any right protected under the ADA. *Strife*, 138 F.4th at 251. Interference is defined as "'the act of meddling in or hampering an activity or process.'" *Huber v. Blue Cross & Blue Shield of Fla., Inc.*, No. 20-3059, 2022 WL 1528564, at *6 (E.D. La. Ma 13, 2022) (quoting *Walker v. City of Lakewood*, 272 F.3d 1114, 1129 (9th Cir. 2001)); *see also Strife*, 138 F.4th at 251-52 (stating that unlike an ADA retaliation claim, an ADA interference claim must be supported by evidence of "interference."). Protected activities include formal complaints of discrimination or requests for accommodations. *Id.*

Plaintiff cannot maintain that he suffered an adverse impact due to his "exercise or enjoyment" of rights protected under the ADA because Plaintiff did not exercise or enjoy any rights protected under the ADA. As discussed above, while Plaintiff was welcomed to make a request for a reasonable accommodation if he believed he required one, but per his own allegations, he ultimately did not do so. *See supra* Section II. Accordingly, Plaintiff cannot make out a viable claim of ADA interference, and Count IV should be dismissed.

## V.      Plaintiff's False Claim Act Claim (Count II) Fails.

Finally, in Count II, Plaintiff alleges that he was terminated for engaging in protected activity to stop one or more violations of the FCA. (Compl. Count II ¶ 2.)

The FCA prohibits "present[ing] false or fraudulent claims for payment to the Federal Government." *United States v. ex rel. Conyers*, 108 F.4th 351, 354 (5th Cir. 2024). The FCA also protects whistleblowers from retaliation. *See Riddle v. Dyncorp Int'l Inc.*, 666 F.3d 940, 942 (5th Cir. 2012). To establish an FCA retaliation claim, Plaintiff must show: (1) he engaged in activity protected under the statute by reporting fraud against the government; (2) Capella knew that he engaged in protected activity; and (3) Capella discriminated against him because he engaged in protected activity. *United States ex rel. Graves v. ITT Educ. Servs., Inc.,* 284 F.Supp.2d 487, 510

16

(S.D.Tex.2003). Importantly, "[c]laims brought under the FCA must comply with Rule 9(b)." *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997; *see* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.")). As such, plaintiff must "set forth the who, what, when, where, and how of the alleged fraud." *Id.* (quotation omitted). As Plaintiff fails to meet that standard here, this court should dismiss his FCA claim. *King ex rel. United States v. Methodist Hosp. of Dallas*, No. 3:21-CV-1923-B, 2024 WL 967847, at *5 (N.D. Tex. Mar. 6, 2024).

Under the FCA, "[a] protected activity is one motivated by a concern regarding fraud against the government." *Thomas v. ITT Educ. Servs., Inc.*, No. 12–30620, 2013 WL 1189230, at *2 (5th Cir. March 22, 2013). "An employee's actions must be aimed at matters that reasonably could lead to a viable claim under the [FCA]" or "aimed at matters demonstrating a distinct possibility" of False Claims Act litigation." *U.S. ex rel. George v. Bos. Sci. Corp.*, 864 F. Supp. 2d 597, 605 (S.D. Tex. 2012) (internal citations omitted). This standard is met when (1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is committing fraud against the government. *Id.*

The Fifth Circuit recognizes internal complaints that "concern false or fraudulent claims for payment submitted to the government" as protected activity under the FCA but requires that the complaints raise concerns about fraud. *United States ex rel. Patton v. Shaw Servs., LLC*, 418 Fed.Appx. 366, 372 (5th Cir. 2011) (citing *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 952 (5th Cir.1994)). "Mere criticism" about an employer's practices, without any suggestion that the employee "was attempting to expose illegality or fraud within the meaning of the FCA, does not rise to the level of protected activity." *Id.* (citing *United States ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co.*, 612 F.3d 724, 736 (4th Cir. 2010)); *see also United States ex rel. Gomez v. Koman Constr., LLC*, No. EP-20-CV-252-KC, 2025 WL 2437197, at *21 (W.D.

DMS_US.374300558.2

Tex. Aug. 22, 2025) (noting that plaintiff must allege that he informed employer of a violation of law, not just of a contractual or regulatory violation).

Further, "[t]he employer must be on notice that the employee is investigating fraud." *U.S. ex rel. George*, 864 F. Supp. 2d at 607 (citing *Robertson*, 32 F.3d at 952). "Notice can be accomplished by expressly stating an intention to bring a *qui tam* suit, but it may also be accomplished by any action which a factfinder reasonably could conclude would put the employer on notice that litigation is a reasonable possibility." *Id.* Ultimately, the employer "must know" that the employee was engaged in "investigation or other activity concerning potentially false or fraudulent claims that reasonably could lead to a FCA case." *Id.* (citations omitted). Courts have found this notice prong satisfied based on allegations that the employee complained <u>of fraud</u> directly to his supervisor. *Id.* (citing *U.S. ex rel. Smith v. Yale Univ.*, 415 F. Supp. 2d 58, 105 (D. Conn. 2006)) ("Internal reporting has been held to constitute protected activity, but if an employee wants to impute knowledge to the employer for purposes of the second prong of the analysis, he must specifically tell the employer that he is concerned about possible fraud."). Courts are clear, however, that "an employee's allegations that he complained about his employer's errors in performing a government contract are insufficient" <u>unless</u> "the employee specifically referred to fraudulent claims for payment for those services," putting the employer on notice of potential FCA liability. *U.S. ex rel. Johnson v. Raytheon Co.*, 395 F.Supp.3d 791, 798-99 (N.D. Tex. 2019); *see also U.S. ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 743 (D.C. Cir. 1998) ("Merely grumbling to the employer about job dissatisfaction or regulatory violations does not satisfy the requirement—just as it does not constitute protected activity in the first place.").

Here, Plaintiff alleges that he engaged in protected activity by identifying the following acts:

DMS_US.374300558.2

1. Capella improperly withdrew students for lack of engagement, allowing Capella to "unlawfully retain Title IV funds by manipulating R2T4 calculations and to generate new Title IV revenue by forcing students to re-enroll and repay for the same courses";

2. Capella deliberately concealed refund policy information from students impacted by Hurricanes Helene and Milton;

3. Capella disparately applied internal student refund policies;

4. A program director admitted "in writing that known grade errors affecting federal aid could not be corrected due to institutional policy" while Capella certified compliance with federal regulations to receive Title IV funds; and

5. Capella denied student disability accommodations and was falsely certifying compliance with Section 504 while receiving federal funds.

(Compl. at Factual Allegations ¶ C.)

Plaintiff's efforts to base an FCA claim on these five acts fail for multiple reasons, including that Plaintiff fails to allege **with particularity**: (1) fraud against the government through these acts; (2) that he reported these concerns to anyone; and (3) that he put Capella on notice that he was investigating concerns of fraud against the government.

A. <u>Plaintiff's Allegations Regarding Title IV Funding and R2T4 Fail to State a Claim Under the FCA.</u>

Plaintiff first alleges that Capella's policy regarding student engagement resulted in Capella wrongfully retaining Title IV funds. (Compl. at Factual Allegations ¶ C.2.) Essentially, Plaintiff alleges that Capella (1) received Title IV funds for students; (2) tracked student engagement in a way that underreported; (3) improperly withdrew students from enrollment based on low engagement; and (4) made the student re-enroll and repay for the same course, generating

19

another round of Title IV funding for the student. (*Id.*) Capella ardently denies that these allegations are true, but accepts them, as it must, for purposes of this Motion.

Regardless, any effort by Plaintiff to mount an FCA claim on these allegations fails because Plaintiff does not allege he reported this concern to *anyone*, much less that Capella was on notice he was investigating or reporting fraud against the government in this regard. At the outset, this fails to satisfy Plaintiff's obligation plead with particularity. *U.S. ex rel. Thompson*, 125 F.3d at 903; *see also* Fed. R. Civ. P. 9(b).

At most, Plaintiff states at various points in his Complaint that he was "investigating and reporting what he reasonably believed were systemic violations involving the misuse of federal Title IV funds." (*See* Compl. at Factual Allegations ¶ C.1.) From these threadbare labels and conclusions, Capella cannot ascertain who Plaintiff believes he reported these concerns to— whether it be an internal report to Capella, an external report to a government agency, or someone else. This label and conclusion pleading—far from the standard required by Rule 9(b)—fails to state a claim under well-established law. *See Norris v. Hearst Tr.*, 500 F.3d 454, 464 (5th Cir. 2007) (citing *Twombly*, 550 U.S. at 555) ("To withstand a Rule 12(b)(6) motion, the complaint must allege 'more than labels and conclusions,' 'a formulaic recitation of the elements of a cause of action will not do" and "factual allegations must be enough to raise a right to relief above the speculative level[.]").

Regardless, it is clear from the face of Plaintiff's Complaint that even if Plaintiff did make a report to *someone*, *Capella* was not on notice of it. Indeed, Plaintiff alleges that Capella was on notice by virtue of his February 26, 2025, email. (Compl. at Count II ¶ 4.) But that email says nothing of Plaintiff's concerns of fraud against the government based on Capella's engagement policy. Instead, the email says only: "I also want to formally document that I engaged in protected whistleblower activity on February 7, 2025." (Exhibit H, APP 20-28.) Plainly, from this email,

20

Capella was not on notice that Plaintiff was investigating and reporting concerns regarding potentially fraudulent retention of Title IV funds through improperly withdrawing learners. This is fatal to his claim. *U.S. ex rel. Johnson*, 395 F.Supp.3d at 798-99 (employee's general complaint about employer's errors in performing a government contract are insufficient to put employer on notice that the employee is investigating fraud—the employee must "specifically refer[] to fraudulent claims for payment" to satisfy the notice requirement).

Because Plaintiff has not plausibly pled that Capella was on notice of his concern regarding Title IV funds stemming from Capella's application of its engagement policy, an FCA claim premised on this allegation fails to state a claim.

B. Plaintiff's Remaining Allegations Do Not Amount to Fraud Against the Government, Even if They Were Reported.

Plaintiff's remaining allegations fare no better. There can be no doubt that Plaintiff has multiple misgivings with Capella's policy application. But concerns about how Capella applies its internal policies are not *ipso facto* fraud against the government. *United States ex rel. Patton*, 418 Fed.Appx. at 372. It is incumbent upon Plaintiff, in his Complaint, to articulate—**with particularity**—how Capella's application of policy amounts to a "false or fraudulent claim[] for payment to the Federal Government." *United States v. ex rel. Conyers*, 108 F.4th 351, 354 (5th Cir. 2024). Plaintiff has failed to do that.

In addition to the concern discussed above, Plaintiff alleges that Capella engaged in three improper acts with respect to its refund policy for Hurricanes Helene and Milton: (1) it concealed refund policy information from students; (2) it did not give students leniency in application dates, instead "rigidly enforcing" its deadlines; and (3) it approved one request for a refund that Plaintiff felt was "suspect," while denying another that Plaintiff felt was deserving. (Compl. at Factual Allegations ¶ C.4.a-b.) Plaintiff also alleges that "known grade errors" affected federal aid

21

eligibility and "could not be corrected due to institutional policy." (*Id.* at Factual Allegations ¶ C.5.) And Plaintiff alleges that students who deserved reasonable accommodations did not receive them. (*Id.* at Factual Allegations ¶ C.6.) While Plaintiff plainly disagrees with Capella's application of policy in multiple respects, Plaintiff does not articulate with the requisite particularity how any one of these occurrences amounts to fraud against the government as is required to state a claim under the FCA.

And even if he did, Plaintiff's claim nonetheless fails for the same reason stated above: he does not allege that he reported these concerns to anyone—at Capella or otherwise—or that Capella was on notice that he was investigating and reporting fraud against the government with respect to any one of these instances. This, too, is fatal to his claim. *U.S. ex rel. George*, 864 F. Supp. 2d at 607 (to meet the second prong of an FCA retaliation claim, the "employer must be on notice that the employee is investigating fraud.").

Because Plaintiff has not pled with particularity that (1) he reasonably believed Capella was engaged in fraud against the government; (2) that Plaintiff reported that Capella was engaged in fraud against the government; <u>and</u> (3) that Capella was on notice that he reported it was engaged in fraud against the government, his FCA retaliation claim fails to state a claim and must be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, Capella respectfully requests that the Court dismiss Plaintiff's Complaint under Rule 12(b)(6) for failing to state a claim of disability discrimination (Counts I and III), failure to accommodate (Count I), ADA retaliation (Count I), FCA retaliation (Count II), and ADA interference (Count IV).

DMS_US.374300558.2

Dated: October 31, 2025    Respectfully Submitted,

         */s/ Susan E. Egeland*
         SUSAN E. EGELAND
         ATTORNEY-IN-CHARGE
         State Bar No. 24040854
         susan.egeland@faegredrinker.com
         FAEGRE DRINKER BIDDLE & REATH LLP
         1717 Main Street, Suite 5400
         Dallas, Texas 75201
         (469) 357-2500 (Telephone)
         (469) 327-0860 (Fax)

         **ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been served by ECF upon Pro Se Plaintiff, Robert Trent (registered ECF user, Dkt. 8), in accordance with the Federal Rules of Civil Procedure on October 31, 2025:

         */s/ Susan E. Egeland*
         SUSAN E. EGELAND

DMS_US.374300558.2