# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# LUBBOCK DIVISION

| | | |
|---|---|---|
| ROBERT TRENT, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case 5:25-cv-00176-H-BV |
| CAPELLA UNIVERSITY, LLC, | § § § | |
| Defendant. | § § § | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Defendant Capella University, LLC ("Capella"), by and through the undersigned counsel, respectfully submits this Reply Memorandum of Law in support of its Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

In his Opposition, Plaintiff tries to impose a false dichotomy, asserting that because Capella has not introduced evidence of Plaintiff's poor performance, it must not exist. But at this stage, Capella cannot introduce any facts or evidence that are not contained in, or incorporated by, the Complaint. Instead, Capella has shown that Plaintiff's Complaint, even taken as true, does not state a claim on which relief can be granted. In response to this Rule 12 motion, Plaintiff must articulate how <u>facts pleaded in his Complaint</u> state a claim for relief. Plaintiff has failed to make this showing, and his claims for disability discrimination (Counts I and III), failure to accommodate (Count I), ADA retaliation (Count I), False Claims Act ("FCA") retaliation (Count II), and ADA interference (Court IV) remain implausible and must be dismissed pursuant to Rule 12.

1

# ARGUMENT

## I. Plaintiff's Disability Discrimination Claims (Counts I and III) Fail.

The allegations contained in Plaintiff's Complaint make plain that he is not a "qualified individual with a disability"—that is, someone who, with or without a reasonable accommodation, can perform the essential functions of his job. 42 U.S.C. § 12111(8) (ADA) *Bradley v. Univ. of Texas M.D. Anderson Cancer Ctr.*, 3 F.3d 922, 924 (5th Cir. 1993) (Section 504 of the Rehabilitation Act).

Plaintiff does not (because he cannot) dispute that professional communication was an essential function of his job as Academic Coach. (*See* Opposition at 3.)

Beyond that, according to the allegations contained within Plaintiff's Complaint and documents incorporated by the Complaint:

- Plaintiff was disciplined for failing to engage in professional, respectful communication—an essential function of his job. (Compl. at ¶ B.1.)
- He alleges this failure to engage in professional, respectful communication was "directly" caused by his alleged disabilities. (*Id.*)
- In response to being disciplined for this behavior, Plaintiff wrote—on the Corrective Action Form ("CAF")—that his performance failures were caused by his alleged disabilities, and that they "will continue to impact [his] communication." (APP 2.) To alleviate this impact, Plaintiff stated the need for an undefined accommodation. (*Id.*)
- When Plaintiff's supervisor clarified that with any accommodation, Plaintiff would still be expected to fulfill this essential function of his job—professional and respectful communication—Plaintiff apparently concluded that his accommodation

2

request was met with "predetermined refusal" and therefore constituted a failure to accommodate. (Compl. at ¶ B.3; Count I.)

If a statement that professional communication will <u>always</u> be an expectation is tantamount to a "predetermined refusal" to accommodate, Plaintiff cannot dispute that his request for accommodation was to be excused from the expectation that he communicate professionally.

Plaintiff's explanation now that he could have communicated professionally and respectfully with an accommodation like "clearer, more literal instructions" is not something he alleged in his complaint, and as such, it must be disregarded.[1] *Roebuck v. Dothan Sec., Inc.*, 515 Fed.App'x. 275, 280 (5th Cir. 2013) (internal citations and quotations omitted) ("When deciding a Rule 12(b)(6) motion to dismiss, the district court is limited to the allegations set forth in the complaint. . . the complaint may not be amended by the briefs in opposition to a motion to dismiss[.]"). Nor is it relevant, as Plaintiff asserts, that he indicated he was not making an "admission of inability to perform job related duties[.]" (APP 2.) The question is not whether Plaintiff could perform <u>any</u> job-related duties. The question is whether Plaintiff could perform the <u>essential functions</u> of his job.

Because Plaintiff's Complaint makes plain that he wished to be *excused* from an essential function of his job, not *accommodated* to permit him to perform an essential function of his job, he is not a qualified individual with a disability under applicable law. *McDaniel v. IntegraCare Holdings, Inc.*, 901 F.Supp.2d 863 (N.D. Tex. 2012) (citing *Burch v. City of Nacogdoches,* 174 F.3d 615, 619 (5th Cir.1999) (internal quotations omitted) ("The ADA does not require an employer to relieve an employee of any essential functions of his or her job[.]"). Accordingly,

---

[1] Nor did Plaintiff request this, or any other accommodation, from Capella. While Capella provided Plaintiff with the necessary information to formally request an accommodation, Plaintiff never did so. (*See* APP 5-8; *infra* Section II.)

Plaintiff fails to state a claim of disability discrimination under the ADA and Section 504. Counts I and III must be dismissed insofar as they allege disability discrimination.

## II. Plaintiff's Failure to Accommodate Claim (Count I) Fails.

Following Plaintiff's Opposition, and from the face of Plaintiff's Complaint, there is no dispute that he did not request an accommodation from Capella at any time. The facts as pleaded in the Complaint allege that: (1) Plaintiff disclosed a disability to Capella; (2) Plaintiff indicated a need for an accommodation on June 4, 2024, and was referred to Human Resources (Compl. at ¶ B.2; App. 3-4); (3) Plaintiff inquired about an accommodation from Human Resources on June 12, 2024, and was given instructions regarding how to submit an accommodation request. (Compl. at ¶ B.3; App. 5-8.)

Plaintiff does not allege he ever actually submitted an accommodation request. Instead, Plaintiff seeks to excuse his failure to request an accommodation by arguing that: (1) McHugh's statement that there was a "role expectation of professional communication at all times with learners" predetermined that no accommodation could be granted; (2) he could not get a psychiatric appointment within the deadline for submitting medical documentation to support a request for accommodation;[2] and (3) even if he could have gotten an appointment, the administrative approval for the accommodation required him to "jump[] through impossible hoops[.][3]" (Opposition at 4.)

---

[2] No allegation supporting this argument can be found in Plaintiff's Complaint. And indeed, the documents incorporated with the complaint reflect that on June 21, 2024, Capella gave Plaintiff 15 days to submit the accommodation request form. (App 5–6.) While Plaintiff now argues that this timeframe was insufficient, he does not allege in his Complaint that he raised any concerns about the timeframe, that the timeframe prohibited him from submitting an accommodation request, or that he requested additional time. (*See* Compl.) Indeed, his Complaint says the exact opposite—that the accommodations process was "lengthy." (*Compare* Opposition at 4 *with* Compl. at ¶ B.3.)

[3] Plaintiff fails to allege what made the process "impossible," merely stating in his Complaint that the process was "prohibitive and lengthy" without any further detail. (Compl. at ¶ B.3.)

As explained in Capella's moving brief, to establish a failure to accommodate claim, Plaintiff must show that Capella was aware of his disability <u>and</u> its consequential limitations and that he made a request for an accommodation in "plain and simple terms." (See Dkt. 26 at 16-18.) Plaintiff's allegation that he made McHugh aware of his diagnoses is not enough. *See Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 164 (5th Cir. 1996) (holding that informing employer of a bipolar disorder diagnosis alone was insufficient to support a failure to accommodate claim because plaintiff did not inform employer of a "*limitation*" caused by his disorder). And while Plaintiff claims, in a conclusory fashion, that it was difficult for him to request an accommodation, it remains undisputed that he never requested one. Accordingly, Count I, insofar as it alleges a failure to accommodate, must be dismissed.

### III. Plaintiff's Retaliation Claim (Count I) Fails.

In support of his retaliation claim (Count I), Plaintiff only pleads that he engaged in "protected activity" by "requesting accommodations." (Compl. at Count I ¶ 4.) In his Opposition, Plaintiff includes a timeline of "retaliation." (Opposition at 5.) Notably, Plaintiff's timeline—like his Complaint—is void of any allegation that he requested an accommodation from Capella. (*See id.*) Instead, Plaintiff again seems to rely on the fact that he disclosed his diagnoses to McHugh on April 12, 2024, as his "protected activity." (*See id.*) But disclosing a diagnosis does not constitute a request for accommodation (and therefore protected activity) as a matter of law. *See Taylor*, 93 F.3d at 164 ("the ADA does not require an employer to assume that an employee with a disability suffers from a limitation [requiring an accommodation]. In fact, better public policy dictates the opposite presumption: that disabled employees are not limited in their abilities to adequately perform their jobs."); *see also Mueck v. La Grange Acquisitions, L.P.*, 75 F.4th 469, 486, 488 (5th Cir. 2023), *as revised* (Aug. 4, 2023) (where plaintiff only disclosed that he was struggling with alcoholism and needed time off to attend court-ordered substance abuse classes following a DWI,

Court found plaintiff had not requested a reasonable accommodation and dismissed plaintiff's ADA retaliation claim on summary judgment for lack of protected activity). Because Plaintiff cannot point to any factual allegations in his Complaint that show he ever requested an accommodation, his claim that he suffered retaliation because he "request[ed] accommodations" necessarily fails. Count I, insofar as it alleges retaliation, must be dismissed.

IV.     **Plaintiff's ADA Interference Claim (Count IV) Fails.**

Plaintiff fails to successfully refute Capella's arguments to dismiss Plaintiff's ADA interference claim. Capella moved to dismiss Plaintiff's ADA interference claim on two grounds: (1) because Plaintiff failed to exhaust administrative remedies; and (2) because Plaintiff failed to allege facts showing that Capella interfered with his "exercise or enjoyment" of rights protected under the ADA. (*See* Dkt. 26 at 20-22.)

With respect to administrative exhaustion, Plaintiff points to *one* sentence in his nine-page, single-spaced Charge of Discrimination drafted by his former counsel, which he argues is "like or related to" his ADA interference claim here: "'CAF version on his official employee file was backdated . . . and did not include Robert's disability-related comments or his signature.'" (Opposition at 5; *see also* APP. 19-27.) But the scope of a plaintiff's complaint is not only limited to discrimination like or related to the EEOC charge's allegations, it is limited to the "the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination." *Adams v. Columbia/HCA of New Orleans, Inc.*, No. 22-30389, 2023 WL 2346241, at *2 (5th Cir. March 3, 2023). Plainly, no investigation by the EEOC into ADA interference could have reasonably grown from this single sentence relating to documents missing from Plaintiff's personnel file, which makes no mention of "interference" or any ADA right with which Capella allegedly interfered. Accordingly, Plaintiff has failed to exhaust administrative remedies on his ADA interference claim, which by itself, is fatal to his claim. *See Taylor v.*

*Revature LLC*, No. 1:22-CV-1153 (RDA/WBP), 2025 WL 711961, at *8 (E.D. Va. Mar. 5, 2025), *appeal dismissed*, No. 25-1246, 2025 WL 2634154 (4th Cir. June 26, 2025) (dismissing plaintiff's ADA interference claim for failure to exhaust administrative remedies where plaintiff's EEOC charge did not reference an ADA interference claim).

With respect to Capella's second argument for dismissal—that Plaintiff has not alleged facts showing Capella interfered with his "exercise or enjoyment" of rights protected under the ADA—Plaintiff offers no argument. (*See* Opposition at 5-6.) Instead, Plaintiff doubles down on the insufficient facts pleaded in his Complaint: that Capella's alleged "alteration of documents and its obstruction of email access . . . prevent[ed] Plaintiff from preserving evidence of discrimination."[4] (*Id.* at 6.) Plaintiff points to no rights he exercised under the ADA with which Capella interfered. As discussed above and per his own allegations, Plaintiff never requested an accommodation at all. *See supra* Sections II-III. Accordingly, Plaintiff cannot make out a viable claim of ADA interference and Count IV must be dismissed.

V.   **Plaintiff's False Claim Act Claim (Count II) Fails.**

Plaintiff devotes much of his Opposition to Capella's Motion to Dismiss his FCA claim to asserting that he need not establish definitively that what he was reporting was actually fraud. There is no dispute in this regard.

But, to establish an FCA retaliation claim, Plaintiff <u>does</u> need to show: (1) he engaged in activity protected under the statute by reporting fraud against the government; (2) Capella knew that he engaged in protected activity by reporting fraud against the government; and (3) Capella discriminated against him because he engaged in that protected activity. *United States ex rel.*

---

[4] Capella notes that despite Plaintiff's allegations, the Corrective Action Form ("CAF") with Plaintiff's signature and comments was clearly preserved and, indeed, is on the record before this Court as an incorporated document to Plaintiff's Complaint. (*See* APP. 1-2.)

*Graves v. ITT Educ. Servs., Inc.,* 284 F.Supp.2d 487, 510 (S.D. Tex. 2003). Even following his Opposition, it is clear Plaintiff did not—and cannot—plead the elements of this claim.

Following Plaintiff's Opposition, it remains unclear whether, and to whom, Plaintiff reported a single allegation of fraud against the government. Plaintiff's threadbare conclusion that he "made reports" is not sufficient to state a claim for relief under Rule 12, and for this reason alone, his FCA retaliation claim fails.

But even if Plaintiff did "make reports" to *someone*, his Opposition only further underscores that he did not put *Capella* on notice that he was investigating and reporting fraud against the government. At most, Plaintiff doubles down on his February 26, 2025, email with the subject line "Formal Notice of Legal Violations of Protected Whistleblower Disclosure." (Opposition at 6-7.) But as explained in Capella's moving brief, that email says nothing of Plaintiff's concerns of fraud against the government. (*See* Dkt. 26 at 26-27.) Instead, the email says only: "I also want to formally document that I engaged in protected whistleblower activity[5] on February 7, 2025" and "I have firsthand knowledge of serious legal violations." (APP 16.) It says nothing that indicates Plaintiff was attempting to expose fraud "within the meaning of the FCA," as is required. *See United States ex rel. Jackson v. Ventavia Rsch. Grp., LLC,* 667 F. Supp. 3d 332, 367 (E.D. Tex. 2023) (dismissing FCA retaliation claim because while plaintiff alleged she raised numerous concerns "about patient safety, or protocol and regulatory violations," those are "not the same thing as complaining about defrauding the Government").

Plainly, from this email, Capella was not on notice that Plaintiff was purportedly investigating and reporting concerns regarding potentially fraudulent "schemes to avoid required R2T4 refunds and false certifications material to Title IV disbursements," as Plaintiff argues. (*See*

---

[5] Of course, "whistleblower activity" is a broad phrase that could encompass any number of things aside from fraud against the government for purposes of an FCA claim.

Opposition at 6.) This, too, is fatal to his claim. *U.S. ex rel. Johnson v. Raytheon Co.*, 395 F.Supp.3d 791, 798-99 (N.D. Tex. 2019*)* (employee's general complaint about employer's errors in performing a government contract are insufficient to put employer on notice that the employee is investigating fraud—the employee must "specifically refer[] to fraudulent claims for payment" to satisfy the notice requirement). Because it remains undisputed that Plaintiff never put Capella on notice that he had reported fraud against the government, his FCA retaliation claim fails. Count II must be dismissed.

### VI. Plaintiff's Request for Leave to Amend is Futile.

Following Plaintiff's Opposition, it is clear that Plaintiff: (1) was not qualified for the role of Academic Coach; (2) never requested an accommodation from Capella; (3) has no facts supporting his unexhausted ADA interference claim; and (4) did not put Capella on notice that he was allegedly investigating fraud against the government. Because there are no set of facts that would entitle Plaintiff to relief for his asserted claims, granting leave to amend would be futile. *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872–73 (5th Cir. 2000) (citation omitted) (stating that the district court has "discretion to deny a motion to amend if it futile," meaning that the "amended complaint would fail to state a claim upon which relief could be granted.") Accordingly, Plaintiff's request for leave to amend should be denied.

### **CONCLUSION**

For the foregoing reasons, Capella respectfully requests that the Court dismiss Plaintiff's Complaint under Rule 12(b)(6) for failing to state a claim of disability discrimination (Counts I and III), failure to accommodate (Count I), ADA retaliation (Count I), FCA retaliation (Count II), and ADA interference (Count IV).

Dated: November 20, 2025                Respectfully Submitted,

                                           */s/ Susan E. Egeland*
                                           SUSAN E. EGELAND
                                           ATTORNEY-IN-CHARGE
                                           State Bar No. 24040854
                                           susan.egeland@faegredrinker.com
                                           FAEGRE DRINKER BIDDLE & REATH LLP
                                           1717 Main Street, Suite 5400
                                           Dallas, Texas 75201
                                           (469) 357-2500 (Telephone)
                                           (469) 327-0860 (Fax)

                                           **ATTORNEYS FOR DEFENDANT**

## **CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing document has been served by ECF upon Pro Se Plaintiff, Robert Trent (registered ECF user, Dkt. 8), in accordance with the Federal Rules of Civil Procedure on November 20, 2025:

                                           */s/ Susan E. Egeland*
                                           SUSAN E. EGELAND