# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# LUBBOCK DIVISION

| | |
|---|---|
| ROBERT TRENT, § | |
|     Plaintiff, § | |
| § | **Case 5:25-cv-00176-H-BV** |
| v. § | |
| § | |
| CAPELLA UNIVERSITY, LLC, § | |
|     Defendant. § | |

## PLAINTIFF'S RESPONSE AND BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO STAY DISCOVERY

Use of Generative Artificial Intelligence: Pursuant to Local Civil Rule 7.2(f), Plaintiff discloses that generative artificial intelligence was used in the preparation of this brief.

### INTRODUCTION

Defendant asks this Court to stay all discovery pending resolution of its Motion to Dismiss (Dkt. 21). The request should be denied for three independently sufficient reasons.

**First,** Defendant's own conduct forecloses the relief it seeks. On February 11, 2026, Defendant's lead counsel—a partner at Faegre Drinker—emailed Plaintiff requesting a 30-day extension to respond to Plaintiff's First Set of Requests for Admission. Plaintiff granted the extension as a professional courtesy. In the same email thread, counsel then disclosed Defendant's intent to move for a stay of the very discovery she had just negotiated additional time to answer. (Ex. A.) A party that engages with the discovery process by negotiating response deadlines has conceded that discovery is operative. Defendant cannot stipulate to a deadline and then ask this Court to erase it.

1

**Second,** judicial economy favors proceeding. This Court directed the parties to confer and file a Joint Proposed Scheduling Order (Dkt. 29) on December 29, 2025—over a month after Defendant filed its Motion to Dismiss. Defendant participated in that process, jointly proposing an August 17, 2026 discovery completion deadline. (Dkt. 35.) A stay would nullify the scheduling framework this Court ordered the parties to build.

**Third,** the discovery is essential regardless of the Motion to Dismiss. Plaintiff's claims are fact-intensive, alleging that Defendant's stated reason for termination ("performance") is pretextual. The critical evidence regarding this pretext—including but not limited to, internal communications about the compliance issues Plaintiff reported—is exclusively in Defendant's possession. A stay does not preserve the status quo; it preserves Defendant's informational advantage while time-sensitive digital evidence regarding policy changes continues to degrade.

## PRELIMINARY MATTER: DEFENDANT'S IMPROPER INTRODUCTION OF EXTRINSIC EVIDENCE

Before addressing the stay factors, Plaintiff must address Defendant's decision to attach as Exhibit A to its Motion to Stay an email Plaintiff sent to a student on May 20, 2024. This exhibit has no relevance to the legal standard for a stay, which turns on the breadth of discovery sought, the burden of responding, and the strength of the dispositive motion. The contents of an employee's email to a student ten months before his termination bear on none of these factors.

The exhibit's inclusion serves a single purpose: to prejudice the Court on the merits before an Answer is filed. However, the exhibit undermines Defendant's position. The email is dated May 20, 2024. Defendant retained Plaintiff for ten additional months after this communication, continuing to assign him students and conducting a full annual review. Defendant did not cite this email as the basis for Plaintiff's termination in its filings with the Texas Workforce Commission.

2

If this email warranted termination, Defendant had ten months to act on it and chose not to. The fact that Defendant resurrects it now—while simultaneously claiming it lacks the resources to answer Requests for Admission—speaks to its litigation strategy, not the merits of Plaintiff's case.

For context, the student in question had been verbally hostile and had repeatedly refused to schedule appointments while demanding immediate priority over other students. Plaintiff's response was direct — consistent with his role as an Academic Coach, which required challenging unproductive student behaviors, not deferential customer service. Defendant's own conduct — retaining him for nearly a year afterward — confirms it did not consider the interaction a fireable offense. Notably, Plaintiff was terminated on March 12, 2025. To date — across a 23-page Motion to Dismiss, a 30-page appendix, and now this Motion to Stay — Defendant has not produced a single quote, policy, or specific factual basis for what Plaintiff allegedly did on or near that date to warrant immediate termination. The best Defendant can offer this Court is a single email — one interaction out of over 4,600 — from ten months before the termination.

**EVIDENTIARY IRREGULARITIES IN DEFENDANT'S EXHIBIT A**

Plaintiff also notes that Defendant's Exhibit A (Dkt. 39-1) is not a standard email export. Forensic review of the filed PDF reveals that the page containing the email header and body text is rendered as a static image — non-selectable and non-searchable — while the subsequent pages containing Plaintiff's signature block are rendered as native, selectable text. A document assembled from two different source formats is not an email export; it is a composite. Defendant filed a 30-page appendix with its Motion to Dismiss (Dkt. 22) containing six email exhibits, every one produced as a clean, searchable, natively formatted PDF. Defendant knows how to export an email. It chose not to here. The only exhibit Defendant chose to file as a stitched image is the only exhibit whose purpose is to prejudice Plaintiff — and it is the only exhibit whose authenticity Plaintiff

3

cannot verify without the native .msg or .eml file and its associated metadata. This Court should not credit an exhibit that Defendant had every capability to produce properly and deliberately chose to produce irregularly. At minimum, this irregularity underscores why discovery must proceed: Plaintiff is entitled to the native ESI necessary to verify documents Defendant selectively introduces to this Court.

## LEGAL STANDARD

A pending motion to dismiss does not automatically stay discovery. *Glauche v. RCI Advanced Tech., Inc.*, No. 3:13-cv-0424-M, 2013 WL 6230383, at *2 (N.D. Tex. Dec. 2, 2013). The movant bears the burden of demonstrating good cause. A stay is appropriate only when the motion to dismiss raises purely legal issues that are clearly dispositive of the entire case. Where, as here, the claims rely on disputed facts regarding intent and pretext, a stay is unwarranted.

## ARGUMENT

**I. Defendant's Negotiation of a Discovery Deadline Is a Concession That Discovery Is Operative.**

The procedural sequence is undisputed. On February 9, 2026, Plaintiff served his First Set of Requests for Admission (118 requests). On February 11, 2026, Defendant's counsel emailed Plaintiff asking: "Given the volume of requests, can we agree to an additional 30 days to respond?" Plaintiff agreed. (Ex. A.)

By requesting an extension to answer, Defendant conceded that answering was feasible. Defendant now seeks to convert that courtesy into a tactical advantage—securing a delay to file a motion to stop the process entirely. This constitutes sandbagging and violates the spirit of

4

cooperation expected in this District. If the discovery were truly "undue," Defendant should have moved for a stay immediately, rather than negotiating a response date.

**II. The Motion to Dismiss Does Not Present Purely Legal Questions Justifying a Stay.**

A stay is warranted only if a preliminary review of the dispositive motion reveals it to be clearly meritorious and truly case-dispositive. Defendant's Motion fails this test because it relies on disputed facts.

For example, Defendant argues Plaintiff "never requested accommodations." (Dkt. 21 at 10–12.) Yet Defendant's own appendix contains the document refuting this: a Corrective Action Form where Plaintiff wrote, "This is not an indication or admission of inability to perform job related duties but rather to convey my needs for accommodation. I would request that this be reflected on my record here." (Dkt. 22, APP 1–2.) Whether Defendant can legally ignore that written request is a factual dispute regarding the interactive process under the ADA—not a legal question resolvable on the pleadings.

**III. Even Partial Dismissal Would Not Reduce the Scope of Discovery.**

Defendant argues that if the False Claims Act ("FCA") claim is dismissed, discovery regarding its refund policies and engagement tracking becomes irrelevant. (Dkt. 39 at 3–4.) This is legally incorrect for two independent reasons.

**A. Evidence of Pretext.** In an employment discrimination case, Plaintiff must prove the employer's stated reason for termination is pretextual. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000). Plaintiff alleges he was fired for his rigid adherence to compliance rules—a manifestation of his disability—and his opposition to policy changes he reasonably believed were

unlawful. The facts regarding those policy changes (refunds, Title IV compliance) are necessary to prove motive and pretext under the ADA, regardless of whether the FCA claim survives.

**B. ADA Opposition Clause.** Plaintiff's internal reports specifically cited violations of the ADA and Section 504 of the Rehabilitation Act, including the failure to accommodate a blind learner and the removal of refund policies in a manner that rendered them inaccessible to students using assistive technology. Opposing acts made unlawful by the ADA constitutes protected activity under 42 U.S.C. § 12203(a). Discovery on these topics is central to the ADA retaliation claim irrespective of the FCA.

**IV. Defendant's FERPA Concerns Are a Red Herring.**

Defendant attempts to justify a stay by citing privacy concerns under the Family Educational Rights and Privacy Act ("FERPA"). (Dkt. 39 at 3.) This is a routine discovery issue, not a basis for halting litigation. FERPA does not shield institutions from producing records in response to lawful discovery.

Any privacy concerns are remedied by two standard mechanisms already contemplated in this case. First, Defendant can produce records with student names redacted. Second, the Parties have already agreed to submit a standard Protective Order. (Dkt. 35 at 7.) Furthermore, 34 C.F.R. § 99.31(a)(9) specifically permits disclosure of education records to comply with a judicial order. Defendant's reliance on FERPA is a delay tactic, not a legal impediment.

**V. Plaintiff's Requests for Admission Are Proportional and Efficient.**

Defendant claims 118 Requests for Admission create an "undue burden." (Dkt. 39 at 2–3.) The substance of the requests proves otherwise.

Approximately 15% (Requests 1–18) are pure document authentication—"Admit that Exhibit X is the document it purports to be." Many of these exhibits are documents Defendant itself filed with this Court as part of its Motion to Dismiss appendix. Authenticating one's own filings is not a burden.

**Approximately 50% ask Defendant to confirm the contents of its own documents or confirm dates drawn from its own employment records**—dates of discipline, dates of communications, dates of termination. These requests require nothing more than reading the document and confirming whether the quoted language appears or checking a calendar fact against Defendant's own files. There is no investigation, no privilege review, and no custodian inquiry.

Taken together, approximately two-thirds of Plaintiff's Requests for Admission require Defendant to do nothing more than read its own documents and confirm what they say. The remaining requests address comparator treatment, institutional practices, and ESI preservation—all of which are answerable from Defendant's existing records. It is not an "undue burden" for a party to read its own exhibits. RFAs are the most efficient tool available to narrow the issues for trial, and allowing responses to proceed would advance this Court's interest in efficient case management.

## VI. Defendant's Claimed Burdens Are Self-Inflicted and Exaggerated.

Defendant selectively highlights **three requests** to suggest extraordinary burden. (Dkt. 39 at 4–5.) These claims do not withstand scrutiny.

**Request No. 81 (Policy Disclosure).** Defendant claims this requires an "extensive forensic audit of all of Capella's platforms." (Dkt. 39 at 5.) It does not. Capella knows its own published student-facing policies. It can simply admit or deny whether a specific disclosure exists.

7

**Request No. 94 (Management Discussions).** Defendant claims it must "speak with every managerial employee who may have been in Plaintiff's presence." (Dkt. 39 at 5.) The answer is in the exhibits already served with the RFAs — Plaintiff's own written communications reference these discussions. Moreover, Plaintiff worked remotely; his interactions with management occurred via Microsoft Teams and email, all of which Defendant maintains in its own systems. This request requires Defendant to review documents it is already obligated to preserve.

**Request No. 110 (Student Conduct).** Defendant claims it must pull "every student disciplinary action" throughout Plaintiff's employment. (Dkt. 39 at 5.) A simple query of Defendant's student conduct database for Plaintiff's name would answer this request. If Defendant's record-keeping is so disorganized that it cannot determine whether it took disciplinary action involving a specific employee, that is a problem of Defendant's own making—not grounds for a discovery stay.

## CONCLUSION

Defendant has not carried its burden. Its Motion to Dismiss relies on disputed facts. Its litigation conduct—negotiating deadlines—contradicts its claim of burden. And the discovery sought is essential to prove pretext under the ADA and Rehabilitation Act regardless of the FCA claim.

Plaintiff respectfully requests that this Court **DENY** Defendant's Motion to Stay Discovery.

In the alternative, if the Court is inclined to grant any stay, Plaintiff requests that it: (1) exclude Requests for Admission from the scope of any stay, as these require no new document production and serve to narrow the factual disputes for any future proceedings; and (2) toll the

discovery completion deadline day-for-day for the duration of any stay to prevent compression of the remaining schedule.

Respectfully Submitted,


/s/ Robert Trent
**ROBERT TRENT**
Pro Se Plaintiff
7510 88th St.
Lubbock, TX 79424
(806) 507-1592
Robert.trent0139@gmail.com

# CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2026, a true and correct copy of the foregoing was served on all counsel of record via the Court's CM/ECF system:


    Terran C. Chambers – terran.chambers@faegredrinker.com
    Daniel G. Prokott – daniel.prokott@faegredrinker.com
    Susan A. Yelk – susan.yelk@faegredrinker.com
    Sara E. Inman – sara.inman@faegredrinker.com


/s/ Robert Trent
**ROBERT TRENT**