**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**LUBBOCK DIVISION**

| | | |
|---|---|---|
| ROBERT TRENT, | § | |
|     Plaintiff, | § | |
| | § | **Case 5:25-cv-00176-H-BV** |
| v. | § | |
| | § | |
| CAPELLA UNIVERSITY, LLC, | § | |
|     Defendant. | § | |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT [Dkt. 59]**

***Use of Generative Artificial Intelligence:*** *Pursuant to Local Civil Rule 7.2(f), Plaintiff discloses that generative artificial intelligence was used in the preparation of this filing.*

**I. INTRODUCTION**

Rule 15(a)(2) commands that "the court should freely give leave [to amend] when justice so requires." Futility—the only ground Defendant raises—requires a showing that the proposed amended complaint cannot possibly state a claim under any reading. *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872–73 (5th Cir. 2000). At this stage, the Court accepts Plaintiff's factual allegations as true and draws all reasonable inferences in his favor. *Iqbal*, 556 U.S. at 678.

Defendant's 34-page Opposition does not apply this standard. Instead, it resolves disputed fact questions against Plaintiff, drawing inferences in the defenses favor, imposes an evidentiary-level specificity requirement completely foreign to Rule 12(b)(6), conflates *qui tam* notice requirements with retaliation standards, and ignores Defendant's own formal discovery admissions explicitly pleaded in the First Amended Complaint (FAC). Because the FAC cures

1

the deficiencies identified by the Magistrate Judge and states plausible claims for relief, leave to amend should be granted.

## II. DEFENDANT CONTRADICTS ITSELF TO IMPROPERLY SHIFT BLAME FOR THE INTERACTIVE PROCESS BREAKDOWN

Defendant's opposition rests heavily on the premise that Plaintiff never requested an accommodation "in direct and specific terms." (Dkt. 64 at 10 and 21) Defendant's own brief does not maintain this position consistently. On a single page, Defendant states: "On June 12, 2024, Plaintiff submitted a formal accommodation request to HR." Two sentences later, Defendant states: "Despite not requesting any accommodations whatsoever, Plaintiff now alleges . . ." (*Id.*)

Read together, Defendant asks the Court to dismiss this case based on three mutually exclusive positions regarding a single threshold fact:

(1) A request was made;

(2) No request was made;

(3) A request was made, but not a specific one.

Defendant's argument that Plaintiff caused the breakdown of the interactive process by failing to pitch a list of specific accommodations adopts a fundamental misunderstanding of the ADA interactive process and ignores Defendant's own actions. As pleaded in the FAC, Plaintiff initiated the process on his Corrective Action Form on June 4, 2024. Within 24 hours, Associate Manager McHugh issued a written declaration of finality: that "the role expectation of professional communication at all times with learners would not change, even with a potential accommodation." Defendant's own EEOC Position Statement separately confirms that McHugh

2

told Plaintiff he "could not speak to learners the way that he did and could not intentionally disconnect learner calls"—an absolute prohibition with no exceptions, issued before any interactive dialogue occurred. (Dkt. 43-1).

Under binding Fifth Circuit precedent, a "clear declaration by an employer that no reasonable accommodation will be forthcoming might indeed be seen as terminating the interactive process and removing any duty the employee had to speak up." *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 738 (5th Cir. 1999). This is further reinforced by *Strife v. Aldine ISD (5th Cir. 2025)* "It is a plaintiff's "submission of a request for accommodation [that] triggers the employer's obligation to participate in an interactive process." Defendant cannot abort the interactive process on day one with a predetermined rejection, and then blame Plaintiff at the pleading stage for failing to complete a futile 15-day medical documentation administrative process.

To the extent the FAC lists structural accommodations (such as a supervised disengagement protocol), they are explicitly pleaded to satisfy the legal requirement that reasonable accommodations *existed* that would have enabled performance within the newly and uniquely imposed customer service standard, not as formal proposals Plaintiff was required to pitch after Defendant had already declared the interactive process dead. By demanding the Court ignore the well-pleaded allegations of the FAC, Defendant's futility argument fails as a matter of law under Rule 12(b)(6).

## III. PLAINTIFF DID REQUEST A SPECIFIC ACCOMMODATION FOR WHICH HE WAS VASTLY OVERQUALIFIED

3

Defendant's claim that Plaintiff "did not request any accommodations whatsoever" is factually false under the text of the FAC. The FAC explicitly pleads that Plaintiff applied for reassignment to the vacant Academic Success Specialist role. Reassignment to a vacant position is a recognized form of reasonable accommodation under the ADA. See *Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, 418 (5th Cir. 2017).

Plaintiff pleaded that he not only met but vastly exceeded the posted qualifications. Yet, Defendant denied the application without an interview. Defendant attempts to brush this off by arguing Plaintiff failed to plead he could perform the new position's essential functions. That is a merits argument resting on a fact-intensive essential-function question that Defendant elsewhere concedes cannot be resolved at the pleading stage.

## IV. DEFENDANT IMPROPERLY DEMANDS THE COURT DETERMINE ESSENTIAL JOB FUNCTIONS AT THE PLEADING STAGE

Defendant claims Plaintiff is not a qualified individual, arguing that Plaintiff wanted to be excused from "professional communication," which Defendant ___subjectively___ defines as an essential job function. Plaintiff disputes this definition throughout the FAC.

The FAC pleads that the unwritten "customer service" and "brand protection" standards applied retroactively, and exclusively to Plaintiff after his disability disclosure, do not appear anywhere in the official job description—a fact Capella formally admitted in discovery. (RFA Nos. 73, 75, 78.) Furthermore, the FAC pleads that this unwritten standard was selectively enforced, identifying non-disabled comparators (e.g., Monile Bell-Malaaleu) who engaged in identical or more severe direct communication with learners, disclosed in the direct presence of supervisors without discipline.

4

Defendant cannot ask the Court to declare a subjectively defined, selectively applied, unwritten standard an "essential function" as a matter of law to secure a dismissal. Determining what constitutes an essential job function is a fact-intensive inquiry inappropriate at the Rule 12(b)(6) stage. *Credeur v. Louisiana ex rel. Office of Attorney General*, 860 F.3d 785, 792 (5th Cir. 2017).

## V. DEFENDANT IMPROPERLY ATOMIZES THE NOTICE ALLEGATIONS AND RELIES ON SUPERSEDED LAW TO DEFEAT THE FCA CLAIM

### A. Director Taylor's Contemporaneous Escalation Is Direct, Not Circumstantial, Evidence of Notice

Before reaching the governing legal standard, the Court should consider the notice allegation Defendant's own opposition does not meaningfully rebut. Defendant dismisses Director RT Taylor's escalation of Plaintiff's Borrower Defense to Repayment ("BDAR") communications as speculative, arguing Plaintiff "does not connect his alleged BDAR concerns to any one of the 'reports' he made." (Dkt. 64 at 29.)

This demands an evidentiary-level matching game foreign to Rule 12(b)(6) and relies on a deliberate mischaracterization of federal law. In Footnote 6, Defendant attempts to sanitize BDAR by framing the *Sweet v. Cardona* settlement as a mere administrative dispute about Department of Education "delays." But by statutory definition, BDAR is the mechanism through which students obtain federal loan discharges based exclusively on **institutional fraud and misrepresentation** (34 C.F.R. § 685.206).

The pleading-stage question is not whether Taylor's escalation mapped perfectly to a specifically named agency complaint; it is whether Capella's leadership understood Plaintiff's conduct implicated federal fraud liability. When a university director flags an employee's communication

5

about a federal fraud mechanism as a "legal statement" and routes it to HR, the Court must reasonably infer the institution was on notice of the employee's efforts to expose or stop fraud—hours before his formal whistleblower email even arrived.

## B. Defendant Relies on a Standard Congress Superseded in 2009

Defendant relies on *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948 (5th Cir. 1994), to argue that Plaintiff failed to put Capella on notice of "the distinct possibility of qui tam litigation." Defendant attempts to modernize this outdated standard by citing *Gonzalez v. Fresenius Med. Care*, a 2010 district court case, but *Gonzalez* explicitly relies on the very same 1994 *Robertson* standard for conduct that occurred prior to the statute's amendment. That standard was designed for claims premised on assistance with a *qui tam* lawsuit. Congress expanded § 3730(h) through the Fraud Enforcement and Recovery Act of 2009 ("FERA") to separately protect "efforts to stop one or more violations" of the FCA. Under the post-FERA standard, the relevant question is not whether Defendant feared litigation; it is whether Defendant knew Plaintiff was engaged in efforts to stop what he reasonably believed were violations involving federal funds. Applying *Robertson's* litigation-notice requirement to an "efforts to stop" claim effectively writes the 2009 amendment out of the statute and applies "magic words" doctrine to the FCA.

## C. The Notice Allegations Must Be Evaluated Cumulatively, Not in Isolation

Even under Defendant's preferred standard, its argument fails because it evaluates each notice indicator individually and discards each as insufficient standing alone. That is not the correct analysis at the pleading stage. Plausibility is assessed on the totality of the well-pleaded

6

allegations, not by isolating and dismissing each one in turn. The FAC pleads four indicators converging within a tight six-week window:

**First,** Taylor's "legal statement" escalation established that Capella's leadership was already framing Plaintiff's conduct in terms of federal fraud liability before formal notice arrived.

**Second,** Plaintiff's February 26, 2025 formal written notice explicitly bifurcated his ADA grievances from his FCA concerns. The notice stated that he had "engaged in protected whistleblower activity on February 7, 2025," that he possessed "firsthand knowledge of serious legal violations that leadership is aware of," and—crucially—that "these matters have been reported." Because this notice arrived just after Taylor escalated Plaintiff's BDAR communications to HR as a "legal statement," Defendant received this express warning in a context its own leadership had already connected to institutional fraud liability.

**Third,** Plaintiff's employer-provided email was disabled for 33 hours without notice or operational explanation within days of his February 7, 2025 FSA complaint filing—the sole communication channel available to him as a fully remote employee, during an active dispute, at the precise moment he was engaging in efforts to stop one or more violation of the FCA.

**Fourth,** Plaintiff's performance review was accelerated on February 24, 2025—the same day Plaintiff's OHE complaint was confirmed as escalated by the Minnesota Office of Higher Education, Capella's designated SARA portal agency, and the same day two HR decision-makers independently concluded in writing that Plaintiff was "seeking legal counsel."

## D. Defendant's Claimed Ignorance Contradicts Its Own Auditing Practices

Defendant professes ignorance of Plaintiff's advocacy for a legally blind student, arguing it "cannot retaliate... for something it did not know about." (Dkt. 64 at 23). Yet, Defendant's entire

7

disciplinary defense relies on intensively auditing Plaintiff's calls to extract isolated sentences (such as a single coaching question about an MBA) to use as pretext. At the pleading stage, it is a highly reasonable inference that an employer scrutinizing a remote employee's recorded communications closely enough to build a disciplinary record also heard the protected ADA advocacy occurring on those exact same monitored channels. Defendant cannot claim to monitor Plaintiff's communications for disciplinary reasons, but feign complete ignorance when those same monitored channels capture protected activity.

**E. Defendant's Circular Argument on Temporal Proximity Fails**

Defendant argues that "temporal proximity cannot establish retaliation where no protected activity is pleaded" in an attempt to artificially sever 'knowledge' from 'causation.' (Dkt. 64 at 24). The FAC *does* explicitly plead protected activity. More importantly, at the pleading stage, extreme temporal proximity inherently supports an inference of employer knowledge. When an employer accelerates a disciplinary review the very same afternoon an external agency complaint is escalated, or terminates an employee exactly 14 days after a formal whistleblower email and 24 hours after closing an HR investigation, the timing itself is not merely evidence of causation—it creates a highly plausible, common-sense inference that Defendant *knew* exactly what Plaintiff was doing and reacted to it. Defendant cannot use an unsupported claim of ignorance to wave away a documented, day-by-day retaliatory timeline.

Evaluated together, as Rule 12(b)(6) requires, these allegations support a plausible inference of notice.

## VI. DEFENDANT'S FUTILITY ARGUMENT RELIES ON IGNORING THE FAC'S EXPLICIT ALLEGATIONS OF COERCION

Defendant attempts to reframe Plaintiff's ADA interference claim as a clerical dispute over the "preservation of evidence." To do this, Defendant deliberately ignores the specific acts of coercion and intimidation pleaded in the FAC.

At the pleading stage, the Court must evaluate the FAC as written, accepting its allegations as true, drawing inferences in the plaintiffs favor. The FAC does not plead a general evidence preservation issue; it explicitly pleads that Defendant materially altered the specific official document upon which Plaintiff formally wrote his disability disclosure and accommodation request, producing a backdated copy missing his signature. Under *Strife v. Aldine ISD*, 138 F.4th 237 (5th Cir. 2025), making an accommodation form inaccessible constitutes coercion and interference. The FAC pleads the functional equivalent: retroactively erasing the record of that form after the employee invokes an ADA-protected right.

Furthermore, Defendant's futility argument completely ignores the FAC's allegations regarding the 33-hour email lockout. The FAC explicitly pleads that Defendant disabled Plaintiff's employer-provided email—his sole communication channel as a fully remote employee— without notice during an active dispute. Accepting this well-pleaded allegation as true, cutting off a remote employee's only communication channel outside of the organization is an act of intimidation that states a plausible claim under 42 U.S.C. § 12203(b). Because Defendant's futility argument can only survive by ignoring the actual allegations pleaded in the FAC, it fails the Rule 12(b)(6) standard.

## VII. CONCLUSION

Defendant's Opposition reads as a motion for summary judgment. It demands evidentiary-level specificity, resolves factual disputes in its own favor, and ignores Defendant's own discovery admissions explicitly pleaded in the First Amended Complaint.

The Magistrate Judge explicitly recommended granting Plaintiff this opportunity to amend. Because the FAC successfully fulfills the requirements of that recommendation and states plausible claims for relief under the Federal Rules of Civil Procedure, Plaintiff respectfully requests that the Court grant leave to amend.

Dated: June 19, 2026

Respectfully submitted,

/s/ Robert Trent

Robert Trent

Pro Se Plaintiff

7510 88th St.

Lubbock, TX 79424

(806) 507-1592

Robert.trent0139@gmail.com

### CERTIFICATE OF SERVICE

I hereby certify that on June 19, 2026, a true and correct copy of the foregoing reply was served on all counsel of record via the Court's CM/ECF system:

Terran C. Chambers – terran.chambers@faegredrinker.com

Susan A. Yelk – susan.yelk@faegredrinker.com

Sara E. Inman – sara.inman@faegredrinker.com

Hannah Hughes  – hannah.hughes@faegredrinker.com

/s/ Robert Trent